UNITED STATES of America,
Appellee,

v.

John E. COUGHLIN and Peter A. Pepe, Defendants-Appellants.

Nos. 574, 766, Dockets 74–2391, 74–2441.

United States Court of Appeals, Second Circuit.

Argued March 12, 1975.

Decided April 15, 1975.

David Blackstone, New York City, for appellant Pepe.

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, William J. Gallagher, New York City, on the brief), for appellant Coughlin.

Paul Vizcarrondo, Jr., Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., James E. Nesland and Lawrence S. Feld, Asst. U. S. Attys., on the brief), for appellee.

Before MOORE, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

John E. Coughlin and Peter A. Pepe appeal from judgments of conviction, after a five-day jury trial in the United States District Court for the Southern District of New York, of conspiracy to rob and armed bank robbery and larceny, in violation of 18 U.S.C. §§ 371, 2113(a), (b), (d). Judge Marvin E. Frankel sentenced each defendant to a single five-year prison term, treating all four counts of the indictment as a single offense for purposes of imposing sentence. The principal claim on appeal is that the judge erroneously failed to charge the jury on appellants' alibi defenses. Finding no reversible error, we affirm.

I

On October 30, 1972, at approximately 11:30 A.M., the Empire National Bank in Hyde Park, New York, was robbed by three men wearing ski masks. One of the three was unindicted co-conspirator Walter Burton; as the principal government witness, Burton gave a detailed account of how he and the two appellants executed the robbery. This included "casing" the bank and planning the getaway route, stealing and later abandoning a getaway car, driving in a Chevrolet and a Volkswagen, as arranged, to the Stratford Motor Inn in Connecticut to meet there and divide the proceeds ($31,000), becoming apprehensive over a motel clerk's suspicions, and leaving to meet again in the Howard Johnson Motor Lodge not far away. This testimony was amply corroborated. For example, the manager of the Stratford Motor Inn identified a picture of Coughlin as the man who signed "John Ford" on a registration card, date-stamped 1:43 P.M., October 30, 1972. This witness followed Coughlin (John Ford) out to the motel parking lot and, when he noticed Coughlin talking to two or three other men, made note of the license plate numbers of the two cars they stood next to. Neither license number was the one written on the registration card, but one turned out to be for the Chevrolet registered to Pepe's wife, and the other for the Volkswagen belonging to Burton's girl friend. As already indicated, it was the manager's suspicions, noticed by defendants,

that precipitated the sudden switch of motels. Similarly, a fingerprint expert testified to Coughlin's prints on a registration card at the Howard Johnson Motor Lodge, date-stamped October 30, 1972 at 2:41 P.M., and made out in the name of William Wise.

Neither Pepe nor Coughlin testified. Each called witnesses, however, to prove an alibi for the day of the robbery. Pepe's wife and sister-in-law testified that he was home at the crucial times. Coughlin's former girl friend, Florence Stefane, testified that they had been together on October 30, 1972, and were briefly at the Stratford Motor Inn in the early afternoon seeking "to be alone." They were disturbed by Burton, however, whom they had met in the parking lot. They left and went to the Howard Johnson Motor Lodge where they stayed for an hour.

On cross-examination, Mrs. Stefane conceded that Coughlin was arrested for the bank robbery at her house. She also admitted that she had told the agents who came to arrest Coughlin that he was not in the house. She explained that she had been home only two minutes and did not know that Coughlin was there. In rebuttal, the Government called two of the arresting agents. They testified that Mrs. Stefane had been home for one and one-half hours when they came to arrest Coughlin, that she at first refused to let the agents in, claiming that Coughlin was not there, that she finally let them search, and that, after much effort, they finally found Coughlin in a hiding place behind a partition in one corner of the attic, and arrested him.

## II

The chief issue on appeal involves the failure of Judge Frankel to give the jury an instruction on the defense of alibi. The circumstances surrounding this aspect of the charge are as follows: Before summations, the judge reviewed with counsel the written requests to charge. Appellants did not submit a proposed instruction on alibi. Near the end of the discussion between the judge

and counsel, the following colloquy took place:

Mr. Thau [counsel for Coughlin]: Your Honor, since you took care of requests, and I must apologize for not having submitted. any, the reason I didn't is because I have experienced or enjoyed, I should say, your Honor's charge before.

What I will ask here, and this is not something esoteric which I think much preparation is needed for, is an alibi charge to the effect that they may find that alibi is sufficient to create a reasonable doubt where it otherwise wouldn't have been.

\* \* \* \* \* \*

The Court: . . . .

As to your request about alibi, it seems to me that I can't give it to you both ways. If I grant that, I am going to give the thing about flight and the use of false names.

Mr. Thau: In that case, I withdraw it.

The Court: If you withdraw it, then I let it go at that. I am not sure I would give it to you anyhow, but I was trying to show you the implications of your position from my point of view.

The judge had already denied government requests to instruct the jury that it could find consciousness of guilt from evidence of flight and the use of false names. The judge had stated:

The Court: . . . I don't charge about matters of fact as if they were legal things.

You may argue the significance of flight, which is a factual question, but I won't instruct the jury about that. I think you can be guided on that basis.

During the charge, in accord with his earlier statement, the judge did not specifically mention the defense of alibi. However, he did tell the jury that, in order to convict, it had to find each element of the crimes charged beyond a reasonable doubt, including, as to the conspiracy count,

was he [Coughlin or Pepe] or was he not a member of, a participant in, this alleged conspiracy.

With respect to the overt act requirement on the conspiracy count, the judge also charged that the jury had to be convinced beyond a reasonable doubt that one of the three overt acts alleged in the indictment had occurred. These were that Coughlin, Pepe and Burton on October 30, 1972, (1) entered the Empire National Bank; (2) left its vicinity in a green automobile; or (3) left Hyde Park, N.Y., and proceeded to the Stratford Motor Inn. On the substantive counts, the judge similarly charged that the jury, in order to convict, had to find

> that on October 30, 1972 the Defendants, or the particular Defendant you are considering at any given point, took money from the person or presence of employees of the Empire National Bank . . . .

Thus, the judge adequately pinpointed for the jury the question whether appellants were actually the robbers in the bank in Hyde Park on October 30.

Immediately after the charge, the following exception was taken and request for an additional charge made:

> Mr. Thau: Your Honor, the Court charged at great length on willfulness and knowingly, and so on, almost presuming that the defendants had been present at the bank, and that their intentions were in question or ought to be decided by the jury.
>
> Under these circumstances, I would ask the Court to charge additionally that in the event that they have a reasonable doubt that either or both of these Defendants was at Hyde Park at 11:30 in the morning or thereabouts on

October 30th, 1972, they should acquit, regardless of anything else in the case.

> The Court: Denied.[1]

Appellants argue that the refusal of the district judge to give the jury an alibi instruction, as requested by the defense, was reversible error. We do not agree. There was no written request for a charge on alibi. *Cf.* United States v. Caci, 401 F.2d 664, 670 (2d Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450 (1969) ("Ordinarily the failure to give an instruction on alibi defense will not be considered absent a proper request."). The oral request for such an instruction by counsel for Coughlin was expressly withdrawn, after consultation and agreement with Pepe's counsel.[2] Appellants claim that the withdrawal should be disregarded because the court forced them to take either an alibi charge joined with a charge favorable to the Government on flight and use of false names or no charge on either subject. Although it would have been better had the judge ruled on the orally requested alibi charge without coupling it with the Government's requested charges on concealment and flight, there was some factual connection between the two matters. More importantly, defense counsel specifically withdrew the request instead of standing their ground as to alibi and seeking to persuade the judge not to grant the Government its requests. The reason defense counsel did not do so is clear. It would certainly not have been wrong for the judge to charge on false names and flight and, as appellant Pepe concedes, defendants wanted "to help avoid the damaging effect of the concealment testimony."[3] Thus, coupling the alibi instruction to the Government's requests presented only a question of trial strategy to defense counsel, who then made their choice.[4] Under the circumstances,

---

1. There was a similar exception following a supplemental instruction given in response to a juror's question.

2. Pepe's brief in this court so concedes. Brief of Appellant Peter A. Pepe, at 15 n.

3. Id.

4. The judge did state "I am not sure I would give it [the alibi charge] to you anyhow. . . ." Arguably, this was a hint that if defendants pressed their request they might get an even worse result—no mention of alibi,

the judge's action in linking the rulings was not reversible error.

The request made after the charge had been given[5] was different from the traditional alibi charge asked for earlier, although it certainly would not have been improper to give it. On the other hand, it was not wrong to refuse further instruction at this point, particularly since any post-charge instruction is likely to have considerably more impact than one contained in a comprehensive charge. Finally, we believe that the failure to give the alibi charge has in any event been inflated out of all proportion to its significance in the case. The judge did adequately instruct the jury on the issue of defendants' participation in the crimes charged. If it was so important to the defense to obtain the alibi charge, that request would probably have been made in writing and not orally, almost as an afterthought.

■ In the end, the issue before us is whether the jury correctly comprehended the Government's burden of proof as to the identity of the bank robbers in light of the whole charge. Appellants earnestly argue that the jury may have misunderstood the burden of proof on alibi and thought that defendants had to do more than raise a reasonable doubt as to their presence at the scene of the crime or their participation in the conspiracy. A fair reading of the charge does not leave us with that impression.

### III

■ Appellant Pepe also argues that the cross-examination of Burton was unduly restricted. At one time Burton had apparently planned to concoct a phony defense for one of his many scheduled bank robbery trials. However, the trial judge refused to allow cross-examination of Burton on this subject, ruling that it was collateral to the issues involved. By this time in the trial Burton's credibility

had been attacked extensively. In fact, only a few moments before the above line of questioning was halted, Burton admitted that he would not call himself an honest man. In addition, at another point in the trial, the jury heard testimony of a former cellmate of Burton's that Burton had planned to fabricate a story about his bank robberies and possibly frame a "Tinkerbell." Since Tinker was Coughlin's nickname, this impeachment was of greater value than the testimony refused. Thus, we find no abuse of discretion.

Judgments of conviction affirmed.

---

but a charge on flight. But this is not a reasonable construction of the judge's words. Moreover, the remark came after defendants had withdrawn their request.

5. This was pressed only by Coughlin's counsel.