UNITED STATES of America,
Plaintiff-Appellee,

v.

Maurice BURSE, Defendant-Appellant.

No. 787, Docket 75–1388.

United States Court of Appeals,
Second Circuit.

Argued March 3, 1976.

Decided March 8, 1976.

R. William Stephens, Buffalo, N. Y., for defendant-appellant.

William M. Skretny, First Asst. U. S. Atty., Buffalo, N. Y. (Richard J. Arcara, U. S. Atty., for the Western District of New York, Buffalo, N. Y., on the brief), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

SMITH, Circuit Judge:

On the morning of July 30, 1974, a branch of the Manufacturers and Traders Trust Company Bank located in Lackawanna, New York was robbed of roughly $400. Approximately one month later, appellant Maurice Burse was indicted for that crime and charged with violating 18 U.S.C. §§ 2113(a), 2113(b) and 371 which make it illegal to rob a federally-insured bank or to conspire to do the same.

Indicted with Burse was one Darrell De-Bose. A juvenile by the name of Gary Green was designated by the grand jury as an unindicted co-conspirator.

At Burse's trial in the United States District Court for the Western District of New York (John T. Curtin, *Chief Judge*), the government's case rested heavily upon the testimony of DeBose, Burse's alleged partner in the July 30 holdup. DeBose had earlier pled guilty to one count of the three-count indictment stemming from that offense. Notwithstanding DeBose's testimony, the jury acquitted Burse on the substantive counts. However, Burse was convicted of conspiracy.

From that conviction, Burse now appeals. For the reasons discussed below, we reverse.

## I. THE ALIBI INSTRUCTION

Burse presented three witnesses to support his claim that, on the morning of July 30, 1974, he was in and about his family's house. Despite this evidence indicating that Burse was not at the scene of the crime but was cleaning up his family's yard at the time of the robbery, the court refused to give a jury instruction to the effect that, even if Burse's alibi witnesses were disbelieved, the burden of proof remained with the government.

Burse now claims that the failure to give an alibi instruction was reversible error. We agree.

It is well established that, under proper circumstances, the jury must be given an alibi instruction when the defense so requests. *United States v. Megna*, 450 F.2d 511 (5th Cir. 1971); *United States v. Marcus*, 166 F.2d 497, 503–04 (3d Cir. 1948). The reasoning behind this rule is not difficult to appreciate. Jurors are, by definition, untrained in the specifics of the law and, accordingly, must be instructed as to the legal standards they are bound to apply. In those cases where an alibi defense is presented, there exists the danger that the failure to prove that defense will be taken by the jury as a sign of the defendant's guilt.

Of course, failure to establish an alibi does not properly constitute evidence of guilt since it is the burden of the government to prove the complicity of the defendant, not the burden of the defendant to establish his innocence. That, however, is a point with which we cannot expect jurors to be familiar.

While jurors are apprised in general terms of the government's burden to prove each element of the charged offense beyond a reasonable doubt, this broad admonition as to the government's obligations will not suffice under circumstances such as those here. Even when the jury has been instructed as to the government's burden, there remains the danger that the effect of the attempted alibi defense will be misunderstood. Only a specific instruction can insure that this problem will not occur.

There have been occasions when the courts have viewed the absence of an alibi instruction as harmless. When such an instruction has not been requested or when the evidence of the defendant's guilt has been overwhelming or when the evidence in support of the alibi defense has been negligible or when the defendant's presence at the scene of the crime has not been an element of the offense which the government was required to prove, the courts have held that failure to provide an alibi instruction does not require reversal. *United States v. Coughlin*, 514 F.2d 904 (2d Cir., 1975); *United States v. Cole*, 453 F.2d 902 (8th Cir. 1972); *United States v. Erlenbaugh*, 452 F.2d 967 (7th Cir. 1971), *aff'd on other grounds*, 409 U.S. 239, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972); *United States v. Lee*, 483 F.2d 968 (5th Cir. 1973).

Without commenting on the propriety of these exceptions, we note that none of these mitigating circumstances is present here. An alibi instruction was specifically requested by Burse's counsel. The witnesses presented by Burse provided substantial confirmation of his alibi defense. In the words of Chief Judge Curtin himself, the evidence against appellant Burse was "not overwhelming."[1] And, finally, while Burse was acquitted on the substantive counts and while his presence at the scene of the crime was not necessary for his conspiracy conviction, the prosecution's theory of the case rested heavily on Burse's alleged presence at the scene of the robbery since the government asserted that Burse's presence at the crime was the culmination of the alleged conspiracy.

In summary, we hold that, on the facts of this case, Burse was entitled to an alibi instruction. As a general rule, we think it best for such instructions to be given where alibi is claimed. When, as here, the evidence against the accused is less than overpowering, failure to provide such an instruction in such circumstances constitutes reversible error.

## II. THE PROSECUTION'S CLOSING ARGUMENT

As a second basis for appeal, Burse argues that the prosecution's closing state-

---

1. Judge Curtin continued: "I think [this] is a case where the jury could easily have voted up or down on the evidence presented here."

ment in the trial below was sufficiently prejudicial to require reversal. We agree.

This court has repeatedly addressed itself to the problem of prosecutorial misbehavior in the form of inflammatory or insinuating questions and statements. *United States v. Bivona*, 487 F.2d 443 (2d Cir. 1973); *United States v. White*, 486 F.2d 204 (2d Cir. 1973); *United States v. Drummond*, 481 F.2d 62 (2d Cir. 1973). We have consistently warned that such misconduct may constitute sufficient cause for reversal.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935).

This is a case where the government's closing argument, delivered by William Skretny, First Assistant United States Attorney for the Western District of New York, violated permissible standards of prosecutorial conduct. We come to this conclusion for the following reasons.

(a) Burse's lawyer, in order to impeach DeBose's credibility as a government witness, established that, at the time of his testimony against Burse, DeBose was free on bail and awaiting sentence. In his closing argument, the prosecutor attempted to refurbish DeBose's credibility by implying that DeBose had already served his term in jail when, in fact, he had not.

(b) The prosecutor in his closing comments gratuitously referred to the allegedly high incidence of bank robberies and left open the inference that this general trend constituted evidence of Burse's guilt in this specific instance.

(c) The prosecutor in his closing remarks implied that the failure of the defendant to provide proof of his innocence was to be taken as evidence of his guilt and came dangerously close to direct comment on Burse's failure to take the stand, remarking that "the defendant did not tell you about all the truths."

(d) In his summary, the prosecutor referred to portions of a signed statement made by DeBose which were not introduced into evidence at the trial.

(e) The prosecution made improper and potentially derogatory comments about Burse's lawyer, to wit: "Mr. Stephens [Burse's lawyer] tried to get Barbara Ramos [a witness] to say  .  .  ."; Mr. Stephens "attempted to give you [the jury] the impression that  .  .  ."

(f) The court, on its own initiative, felt compelled to tell the jury that the prosecution in its closing argument may have misrepresented certain testimony presented earlier in the trial. Indeed, on several occasions, the court cautioned the jury that the government's closing argument was replete with "speculation" which the jury was bound to disregard.

(g) The prosecution stated—incorrectly— that a key defense witness had admitted to being drunk on the day of the robbery and on the day she testified in court.

(h) The prosecution continually told the jury that "we know" certain testimony "is

true," leaving the impression that the government had within its possession evidence of Burse's guilt which had not been given to the jury.

Perhaps if the case against Burse had been stronger, these improper comments would be of less significance. However, in an admittedly close case such as this, prosecutorial misstatements take on greater importance, whether those statements are intentional or not. The observations of the Supreme Court in the *Berger* case, *supra*, seem particularly appropriate here:

> The court below said that the case against Berger was not strong; and from a careful examination of the record we agree. Indeed, the case against Berger, who was convicted only of conspiracy and not of any substantive offense as were the other defendants, we think may properly be characterized as weak—depending, as it did, upon the testimony of Katz, an accomplice with a long criminal record.
>
> In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence.

*Berger, supra* at 88–89, 55 S.Ct. at 633, 79 L.Ed. at 1321.

If one replaces the name of defendant Berger with defendant-appellant Burse and the name of government witness Katz with government witness DeBose, this passage is a perfect description of the facts in the instant case.

■ It should go without saying that successful—even zealous—prosecution does not require "improper suggestions, insinuations and, especially, assertions of personal knowledge." *Berger, supra* at 88, 55 S.Ct. at 633, 79 L.Ed. at 1321. However, that is a lesson which was ignored below.

On the facts of this case, reversal is required.

### III. OTHER CLAIMS ON APPEAL

In addition to the arguments discussed above, appellant Burse asserts two other bases for reversal which we feel compelled to address. First, Burse argues that an in-court identification of him made by Mrs. Anna DeBose, mother of government witness Darrell DeBose, was the result of an earlier, impermissively suggestive photo identification procedure. Second, Burse argues that the indictment on which he was convicted was based on improper hearsay evidence.

While we do not sustain the position of the appellant on these two points, we do believe that there is sufficient merit to these contentions to warrant brief comment.

It is, of course, settled law that in-court identifications are inadmissible when they stem from photo identification procedures so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Such impermissible procedures have been of particular concern to this court. *Brathwaite v. Manson*, 527 F.2d 363 (2d Cir. 1975).

■ From the record below, it appears that Mrs. DeBose may have been shown two pictures of prospective defendants other than her son. Because of the independent basis which existed for Mrs. DeBose's identification, the alleged facts of this case would not establish grounds for reversal under *Simmons* and *Brathwaite*. However, they come disturbingly close. There is no justification for photo identification procedures which put before the witness so few pictures.

■ Similarly, we reject Burse's argument that the hearsay-based indictment on which he was convicted is invalid under *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972). However, this contention is also one which cannot be dismissed lightly.

■ This court has repeatedly indicated that indictments based on hearsay are disfavored and that it is preferable for grand juries to be presented with first-hand evi-

dence. *United States v. Catino*, 403 F.2d 491 (2d Cir. 1968); *United States v. Umans*, 368 F.2d 725 (2d Cir. 1966).

While there are instances where it is justified to present hearsay evidence to the grand jury, the record from the court below fails to disclose any valid reason why the grand jury which indicted Burse could not have been given first-hand testimony. The use of hearsay under such circumstances inevitably creates questions which, if possible, are best avoided.

Reversed and remanded.