UNITED STATES of America, Appellee,

v.

Benjamin Jerome HICKS, Appellant.

UNITED STATES of America, Appellee,

v.

Frankie RANDALL, Appellant.

Nos. 82–5304(L), 83–5006.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 30, 1984.

Decided Nov. 7, 1984.

Sprouse, Circuit Judge, dissented and filed opinion.

Fred Warren Bennett, Federal Public Defender, Baltimore, Md., for appellant Hicks.

Stephen D. Langhoff, Doyle & Langhoff, Baltimore, Md., on brief, for appellant Randall.

Herbert Better, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Tried jointly before a jury, Hicks and Randall were both convicted of armed bank robbery in violation of 18 U.S.C. § 2113(d). They appeal, advancing several reasons why they were improperly convicted. We see merit only in the argument that the district court erroneously declined to instruct the jury as to Hicks' alibi defense, and that this error was not harmless. We reverse as to Hicks and grant him a new trial. We affirm as to Randall.

### I.

Hicks and Randall, together with two others,[1] were charged with the armed robbery of the Rogers Avenue branch of the Maryland National Bank in Baltimore on January 28, 1982. A fifth defendant, Anthony Ford, pleaded guilty to an information charging him with violation of 18 U.S.C. § 2113(b) (bank larceny) for his participation in this same robbery, and he became a principal witness for the government at Hicks' and Randall's trial.

The robbery occurred shortly before noon on January 28. Three men, two of them wearing masks and carrying guns, entered the bank. The two men with guns each accosted a bank employee, a teller and a senior field representative, holding them at gunpoint while the third man vaulted the teller's counter and emptied the tellers' cash drawers. The money, along with two hidden dye packs, was placed in a brown paper bag, and the robbers left the bank. Outside the bank, a dye pack exploded and the robber carrying the bag dropped it, but another picked it up and threw it into the back seat of the getaway car. The car was owned by Hicks, although registered in the name of his common-law wife. According to Ford, Hicks drove the robbers to and from the bank in his car, though he did not enter the bank. After the car had gone a few blocks, smoke from the dye pack caused everyone except Hicks to abandon the car and disperse.

The owner of a store near the bank saw the robbers leave the bank, and he provided a description of the car in which they fled and the direction in which the car was driven. Shortly after the robbery the FBI found the car, parked and locked, 3/10ths of a mile from the bank. In the back seat were found the brown paper bag, the money stained with red dye, money orders taken from the bank, a ski mask, and a pair of dark gloves used in the robbery.

At 4:30 p.m. on the day of the robbery the FBI arrested Hicks at his girlfriend's apartment, which was not far from the bank. Hicks had the keys to his car when arrested, but he denied participating in the robbery and denied being with any of the other defendants that day. He told the FBI that he had not seen his car since parking it a few blocks from his girlfriend's apartment at about 10:00 that morning. He also claimed that he had spent the entire time between 11:15 a.m. and 4:30 p.m. with his girlfriend at her apartment, except for a quick trip across the street to obtain some liquor.

Hicks did not testify at his trial, nor did his girlfriend with whom he had allegedly

---

1. These defendants pleaded guilty to bank larceny. They did not testify at the trial of Hicks and Randall.

spent the time of the robbery.[2] The government, however, introduced Hicks' denials when he was arrested as evidence of a false exculpatory statement evidencing consciousness of guilt. Based on this evidence, Hicks requested an alibi instruction to the jury. The district court refused the request, and the jury returned a guilty verdict against Hicks as well as against Randall.

## II.

We hold that the district court erred in refusing to give an alibi instruction.

■ The evidence adduced by the government, albeit to prove that Hicks made a false exculpatory statement showing consciousness of guilt, put before the jury the factual question of whether Hicks was with his girlfriend and away from the site of the robbery when the robbery occurred. If the jury found that Hicks' post-arrest statement was true, or if it raised a reasonable doubt regarding his presence at the scene of the robbery, then the jury was bound to find Hicks not guilty. Thus the government's own evidence may well have provided an effective alibi defense.

■ It is settled law in this circuit as well as in other circuits that, at least upon proper request, a defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence. *See, e.g., United States v. Mitchell*, 495 F.2d 285, 287–88 (4 Cir.1974); *United States v. Fountain*, 642 F.2d 1083, 1095 (7 Cir.), *cert. den.* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *Zemina v. Solem*, 438 F.Supp. 455, 468 (D.S.D.1977), *aff'd* 573 F.2d 1027 (8 Cir.1978); *United States v. Burse*, 531 F.2d 1151, 1153 (2 Cir.1976); *United States v. Garner*, 529 F.2d 962, 970 (6 Cir.1976). The government does not dispute this general principle, but argues the principle is inapplicable here.

The government asserts that no case has held that a defendant may request a defense instruction based solely on evidence that the government offers not for its truth but for its falsity and which, moreover, would not have been admissible if offered by the defendant himself. While we agree that the evidence would not have been admissible if offered by Hicks, we do not think that any of the authorities cited support the argument that only evidence admissible if offered by a defendant may serve as the foundation for a defense instruction. Indeed, *Perez v. United States*, 297 F.2d 12, 15–16 (5 Cir.1961) and *Tatum v. United States*, 190 F.2d 612, 617 (D.C. Cir.1951) speak of "any" evidence, whether "defense" evidence or "government" evidence, as providing a defendant with the foundation justifying a defense instruction. It also does not affect application of the general principle that the government sought to prove the statement it introduced to be untrue rather than true. By offering evidence of what the government contends was a false exculpatory statement, the government put the truth of that statement in issue. We thus reject the government's grounds of distinction and conclude that Hicks was entitled to an alibi instruction.

## III.

■ The government contends that even if the failure to give the substance of the requested instruction was error, the error was harmless. Our beginning point in assaying this argument is a determination of the standard by which harmlessness should be measured. The district court's error implicated Hicks' rights under the Sixth Amendment. Once it appeared that there was sufficient alibi evidence to permit the factfinder to pass on the issue, Hicks had a Sixth Amendment and due process right to have that issue submitted to a jury:

> If the trial judge evaluates or screens the evidence supporting a proposed defense,

**2.** Hicks' counsel represented to the district court that as a matter of trial strategy he concluded not to call the girlfriend as a witness after the government introduced Hicks' statements when arrested as part of its case in chief. Hicks' counsel had told the jury in his opening statement that Hicks would offer an alibi as his defense.

and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant. This is impermissible.

*United States v. Strauss,* 376 F.2d 416, 419 (5 Cir.1967). In addition, due regard for the Fifth Amendment leads to the inevitable conclusion that a defendant must be permitted to prove an alibi other than by his own testimony. *United States v. Curry,* 681 F.2d 406, 416 n. 25 (5 Cir.1982). Failing to give the jury an alibi instruction was thus an error of constitutional magnitude, and under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), we can sustain Hicks' conviction only if we can say that the error was harmless beyond a reasonable doubt.

■ *United States v. Burse, supra,* identifies the factors which we should consider in determining harmlessness:

> There have been occasions when the courts have viewed the absence of an alibi instruction as harmless. When such an instruction has not been requested or when the evidence of the defendant's guilt has been overwhelming or when the evidence in support of the alibi defense has been negligible or when the defendant's presence at the scene of the crime has not been an element of the offense which the government was required to prove, the courts have held that failure to provide an alibi instruction does not require reversal. (citing).

531 F.2d at 1153. Consideration of these factors here suggests that the error was not a harmless one. In this case an alibi instruction was requested.[3] Further, the government's theory was that Hicks aided and abetted the robbers by driving them to and from the bank, so that proof of his presence at the scene of the crime was essential. Finally, we cannot say beyond a reasonable doubt that the government's case so overwhelmed Hicks' alibi defense that an alibi instruction could not have affected the outcome.

While it is true that Hicks did not testify and his girlfriend was not called as a witness to corroborate him, Hicks' statement to the arresting officer, if believed, would provide him with a complete defense. There was evidence, on the other hand, that the statement was untrue for times other than the hour at which the robbery was committed and, as consequence, there was a basis on which the jury could conclude that the statement was false in its entirety.

The only direct evidence linking Hicks to the robbery was the testimony of his co-defendant Ford who, pursuant to a plea bargain, was permitted to plead guilty to a less aggravated form of bank robbery in return for testifying as a government witness. Ford's credibility was sharply attacked on cross-examination. Besides Ford, the government had only circumstantial evidence of Hicks' participation in the robbery. It was, of course, Hicks' automobile which was used in the robbery, and Hicks had the keys to the car when he was arrested. The car was found parked only a short distance from the bank, but that location was also near the apartment of Hicks' girlfriend where he said that he had been when the robbery took place. Although he said that he remained with his girlfriend for the crucial period except to buy liquor, there was proof that he was walking in the area of the bank and his car 30–45 minutes after the robbery. There was proof also that in the afternoon he had a friend drive him to where the car was parked, but when he saw law enforcement officers preparing to tow the car, he told his friend not to stop. Finally, there was evidence that, as his trial approached, Hicks tried to intimidate one government witness, to induce

---

3. Hicks requested the standard alibi instruction plus some additional language which he drew from *United States v. Burse,* 531 F.2d 1151 (2 Cir.1976). The government argues that this language is inappropriate. We express no view on the sufficiency and correctness of the requested instruction in its entirety. We deem that there was a proper request made, at least in part, and we are mindful that the district court has neither ruled on the exact language requested nor is it obliged to use the exact language suggested by counsel.

another government witness to absent herself from trial, and to persuade a third government witness to alter his testimony.

The case is a close one. Unquestionably the jury could find that Hicks' statement at the time of his arrest was untruthful, that he had no alibi, and that he was guilty as charged. Yet, giving to the jury, as we must, the full scope of its right to pass on the credibility of the government's witnesses, we cannot say beyond a reasonable doubt that the jury would have reached these conclusions had the defense of alibi been submitted to it. It follows that Hicks' judgment of conviction must be reversed with the right on the part of the government to try him anew.

### IV.

The defendant's various other contentions require little discussion.

■■■ A. We see no error in the district court's factual determination that Hicks waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), with the result that Hicks' post-arrest statements were admissible in evidence even though he lacked counsel. A waiver of the right to counsel and the right not to incriminate oneself need not be explicit, but may be inferred from all of the circumstances. *See North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Hicks said he understood his rights before he answered questions, he did not request counsel, and he was a person who had had two years of college education. *See United States v. Thompson*, 417 F.2d 196 (4 Cir.1969). *See also United States v. Seni*, 662 F.2d 277 (4 Cir.1981).

■■■ B. Nor do we think that the district court erred when it admitted Randall's post-arrest statement and instructed the jury that it could be considered as evidence only against Randall and not against Hicks. The statement was Randall's false denial that he knew or had ever been with Hicks. The inference that could be drawn from proof of the statement's falsity, that Randall believed that Hicks was involved in the robbery, is in our view too remote, given the limiting instruction, to run afoul of the holding in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■■■ C. The district court erred in permitting the government to prove in its direct examination of Ford that he had no prior criminal record, *cf. United States v. Melia*, 691 F.2d 672 (4 Cir.1982). Unquestionably, the evidence was adduced to bolster Ford's credibility, and Federal Evidence Rule 608(a) specifically provides that evidence of truthful character is admissible "only after the character of the witness for truthfulness has been attacked ..." We think, however, that the error was harmless.

■■■ D. We perceive no abuse of discretion in the denial of Randall's motion made on the first day of trial for a continuance to obtain the presence of an alibi witness. We note also that the trial extended over five days plus a weekend, and Randall apparently made no effort to contact the witness.

■■■ E. Finally, we do not think that the district court abused its discretion in permitting the government to ask two leading questions of Randall's girlfriend, who was called as a government witness. Clearly she was a person "identified with an adverse party" so that interrogation by leading questions was permissible. *See* Federal Evidence Rule 611(c).

REVERSED AS TO HICKS AND NEW TRIAL AWARDED; AFFIRMED AS TO RANDALL.

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent. I can agree that the failure of the trial court to give the defense alibi instruction was error. In my view, however, the error was harmless.

In the first place, the evidence pointing to Hicks' guilt was overwhelming. Anthony Ford, who took part in the robbery, testified that Hicks was one of the five participants. Ford testified that he and

three others, Randall, Francis Jones, and James Nicholson, discussed robbing a drug dealer and later enlisted Hicks; they drove in Hicks' car from Monchella Brown's apartment to the vicinity of the bank where they discussed robbing the bank and the use of firearms. Ford testified that four of the men robbed the bank, while Hicks served as the getaway driver. As they fled, Ford dropped the bag containing the money when a dye pack exploded. The bag was retrieved and thrown into Hicks' car. After they departed in Hicks' car, the fumes from the dye pack caused everyone but Hicks to evacuate the vehicle.

Monchella Brown testified that Ford, Randall, Jones, and Nicholson were at her apartment during the morning of the robbery. She testified that the four discussed robbing "some type of place" and that Jones stated, "I wish Ronnie [Hicks] would hurry up before the place gets crowded."

Nanette Arrington testified that Hicks drove her to a drugstore near Ms. Brown's apartment. Upon their return, she went to Ms. Brown's apartment and saw the four men. Ms. Arrington and Ms. Brown both testified that Hicks arrived at the apartment and left with the four men. Ms. Arrington further testified that approximately three hours after the robbery she encountered Randall, Jones, and Nicholson, who were looking for Hicks. The four went to a friend's apartment. While there, Ms. Arrington spotted Hicks from a window and the three men left and conversed with Hicks.

Charles Blackmon, who was well-acquainted with Hicks, testified that he saw Hicks walking in an area near the bank approximately one-half hour after the robbery. At Hicks' request, Blackmon drove Hicks to Alice Conway's house and then proceeded to visit a friend. While there, Hicks arrived and asked Blackmon to drive him to pick up his car. As they approached Hicks' vehicle, they noticed that it was in the process of being towed. Police cars were also seen near the car. At this point, Blackmon testified, Hicks told him to "keep going" and Blackmon returned Hicks to a point near Alice Conway's house.

This evidence placed Hicks with the participants prior to the robbery, at the bank during the robbery, and with either Blackmon or the participants soon after the robbery.

Secondly, even had the jury's attention been directed to the alibi testimony, it is difficult to imagine evidence with weaker probative effect. Counsel for Hicks in his opening statement told the jury that he would establish an alibi by the testimony of Alice Conway, Hicks' girlfriend. Alice Conway, however, never testified.

The government, in an effort to prove consciousness of guilt through Hicks' false exculpatory statement, offered the testimony of FBI agent Clary that Hicks had falsely told him after his arrest that he had spent the whole day with his girlfriend, Alice Conway, at her apartment. This is the only evidence concerning an alibi and the only evidentiary basis on which the instruction could have been requested. In this unusual trial scenario, I find it difficult to believe that any juror could have been impressed with Hicks' "alibi." His attorney erroneously informed the jury that Hicks' girlfriend would establish the alibi; no defense witness offered any positive probative alibi evidence; the government, through Clary, presented Hicks' statement which was minimally probative of an alibi.

In my mind, the court's failure to give the alibi instruction was negligible error and harmless beyond a reasonable doubt.