861 F.2d 266
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Delroy GORDON, Defendant-Appellant.
 No. 88-5049.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 30, 1988.
Decided Oct. 4, 1988.
 
 C. Dean Latsios, for appellant.
 Henry E. Hudson, Regina Hart, Office of United States Attorney, for appellee.
 Before MURNAGHAN, SPROUSE, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 David Delroy Gordon appeals an order of the district court which denied his motion to suppress cocaine base, or "crack," found in his carry-on bag at Washington National Airport. Under a conditional plea agreement, Gordon pled guilty to possession of cocaine base (a/k/a crack) with intent to distribute, but reserved the right to appeal the denial of his suppression motion. We affirm.
 
 
 2
 Gordon arrived at Washington National Airport on a flight from New York on November 5, 1987, and was observed by agents of the Drug Enforcement Administration Task Force as he got off the plane and walked down the concourse. Detective Floyd Johnston testified that he approached Gordon, identified himself as an officer with the DEA, and asked to speak with him. Gordon agreed, and showed Johnston his ticket and identification. Johnston explained that he was part of a drug interdiction team and asked Gordon whether he was carrying any drugs. Gordon answered that he was not, and that he did not mind if the detective searched his shoulder bag. Johnston found about two hundred small plastic bags in the pocket of a sweatshirt; Gordon told him they were for bread dust. When Johnston asked if he could search the bag further, Gordon asked if they could go somewhere more private. Gordon and Johnston, followed by another detective, moved to a side hall off the main concourse where Johnston continued his search and found a hard, pasty yellowish substance wrapped in a paper towel. Recognizing this substance as crack, Johnston arrested Gordon and advised him of his Miranda rights.
 
 
 3
 As they were walking to the FAA office, in response to questions from Johnston, Gordon said that he had gotten the crack in New York, that it was about the fifth time he had transported drugs, that he could double his money by bringing drugs to Washington and that he intended to take the cocaine to an area of the city called Paradise.
 
 
 4
 Gordon testified that he had denied carrying narcotics because he was scared, that he knew there were at least three other plainclothes detectives in the area and saw a gun on one of them, that Johnston touched the strap of his bag when he asked to search it, that he did not feel free either to leave after Johnston spoke to him or to refuse the request to search, and that he had not understood his Miranda rights.
 
 
 5
 Gordon first contends in this appeal that he was seized without reasonable suspicion in violation of the Fourth Amendment when Johnston said his job was drug interdiction and asked to search Gordon's bag. However, a seizure within the meaning of the Fourth Amendment occurs when a person is restrained by physical force or a show of authority so that he reasonably believes his freedom of movement has been curtailed. United States v. Mendenhall, 446 U.S. 544, 553-54 (1980). The Fourth Amendment is not violated when law enforcement agents merely approach an individual in a public place and ask him if he is willing to answer some questions. Florida v. Royer, 460 U.S. 491, 497 (1983). Although Gordon's version of events differed slightly from Johnston's, the district court concluded, after hearing the testimony of both Gordon and Johnston, that no seizure had taken place. This determination is essentially factual and should be upheld unless clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982). In this case, we agree with the district court that the agents did nothing, prior to the discovery of the crack, which would have led Gordon reasonably to believe that his freedom of movement had been curtailed.
 
 
 6
 Gordon also disputes the district court's finding that he voluntarily consented to the search of his bag, arguing that he did not know he could refuse and was not told he had the right to refuse. Whether a consent is voluntary is determined by the totality of the circumstances, however, and knowledge of the right to refuse consent is not a prerequisite to a valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). We find that the non-coercive circumstances of the encounter between Gordon and the agents amply support the district court's decision that Gordon consented freely to the search of his bag.
 
 
 7
 Gordon next asserts that he was not adequately advised of his Miranda rights and that he did not make a voluntary, knowing and intelligent waiver of them. At the suppression hearing, Gordon admitted that he had been verbally advised of his rights, but said he did not understand his right to remain silent or the warning that anything he said might be used against him. The only reason he gave for his failure to understand was that he had not been mixed up with the law before.
 
 
 8
 An accused need not be asked whether he understands the contents of a Miranda warning. United States v. Hayes, 385 F.2d 375 (4th Cir.1967), cert. denied, 390 U.S. 1006 (1968). He may waive any of his rights, if he chooses, and incriminate himself, but the government has the burden of showing that the waiver was made intelligently. Miranda v. Arizona, 384 U.S. 436, 475 (1966). No explicit statement of waiver is necessary; it may be inferred from the particular circumstances of the case. United States v. Hicks, 748 F.2d 854 (4th Cir.1984) (citing North Carolina v. Butler, 441 U.S. 369 (1979)). Here, there is no evidence in the record of any impediment which might have prevented Gordon from understanding the Miranda warnings he received. Though he did not make an explicit waiver, Gordon responded readily to the questions asked and did not express any unwillingness to speak or any desire for an attorney at that point. We see no error in the district court's determination that he had waived his Miranda rights.
 
 
 9
 Finally, Gordon argues that his statements were involuntary because the psychological impact of being arrested amounted to government coercion. The voluntariness of an admission is determined from the totality of the circumstances, Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973), and an admission will not be found involuntary absent coercive police activity. Colorado v. Connelly, 479 U.S. 157 (1986). The evidence was that Gordon was told he would have to be arrested, informed of his rights, handcuffed, and that he made the admissions in question while he was walking through the airport to the FAA office. No threatening or violent police behavior was involved. The simple fact of his arrest is not coercion sufficient to render Gordon's statements involuntary.
 
 
 10
 Accordingly, we affirm the district court's order denying Gordon's motion to suppress and we affirm his conviction. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and argument would not significantly aid the decisional process.
 
 
 11
 AFFIRMED.