908 F.2d 968
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David A. HARGAS, Defendant-Appellant.
 No. 89-5585.
 United States Court of Appeals, Fourth Circuit.
 Argued February 9, 1990.
Decided July 13, 1990.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Chief District Judge. (CR-88-174-G)
 G. Nicholas Herman, Coleman, Bernholz, Bernholz, Glendhill & Hargrave, Chapel Hill, N.D., (argued), for appellant; Steven A. Bernholz, Coleman, Bernholz, Bernholz, Glendhill & Hargrave, Chapel Hill, N.C.; Bruce H. Morris, Finestone & Cardon, Atlanta, Ga., on brief.
 Paul Alexander Weinman, Assistant United States Attorney, Greensboro, N.C., (argued), for appellee; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 PER CURIAM:
 
 
 1
 Following a trial by jury, the appellant, David A. Hargas, was convicted of 24 counts of aiding and abetting the interstate transportation of fraudulently obtained funds in violation of 18 U.S.C. Sec. 2314. The district court sentenced the appellant to five months' imprisonment on each count to run consecutively and a fine of $12,000. We affirm.
 
 I.
 
 2
 The appellant and Russell A. Cobb[1] devised a scheme whereby money was secured from lease financing companies through the use of fraudulent financing statements and equipment invoices. Cobb, a North Carolina chiropractor, began his dealings with the appellant in 1983 when his chain of chiropractic clinics experienced extreme financial difficulties. The appellant was, at that time, involved in an enterprise named Physicians Equipment Supply, Inc. (Physicians Equipment), based in his home in Atlanta, Georgia. In order to raise working capital, the two men presented fraudulent documentation to lease financing companies across the country. Such documentation included bogus bills of sale for medical equipment and grossly inflated financial statements in order to induce the leasing companies to enter into lease/buy-back contracts with Dr. Cobb and his failing chiropractic clinics.
 
 
 3
 Under these contracts, leasing companies would buy the equipment described in the documentation presented by Hargas and Dr. Cobb, taking title to the described equipment and then leasing it back to Cobb.[2] Cobb in turn agreed to pay monthly installments on the lease over a five-year period. At the end of that term, Cobb had an option of repurchasing the leased equipment. Checks were forwarded by the leasing companies to Physicians Equipment. Physicians Equipment in turn sent a check to Cobb. Over the life of this scheme, the appellant took in over $1.8 million from the sale/lease-back contracts, and Dr. Cobb pocketed over $3.9 million. The enterprise foundered, however, when the two principals ran out of leasing companies to victimize.
 
 
 4
 Thereafter, Cobb's chain of chiropractic clinics filed for bankruptcy protection, and Cobb checked himself into a psychiatric clinic. Upon his release, Cobb agreed to cooperate in an FBI investigation into these leasing schemes. While cooperating with the FBI, Cobb recorded several conversations with the appellant in which certain incriminating evidence was gathered. During these conversations, the appellant admitted that each transaction with the financing companies was based on false documentation.
 
 II.
 
 5
 The appellant first argues that the district court erred when it excluded the testimony of Hammans and Hill. Hill was a person who had entered into lease agreements with the appellant, while Hammans was presented as an outsider expert on such transactions. Upon proffer, the district court found that any testimony given by either witness would be irrelevant or duplicative and accordingly excluded it pursuant to Fed.R.Evid. 401. A trial court's ruling on the admissibility of evidence is accorded great deference and will only be reversed upon a showing of a clear and prejudicial abuse of discretion. See United States v. St. Pierre, 812 F.2d 417, 419 (8th Cir.1987).
 
 
 6
 In this case, the jury was asked to determine the intent of the appellant in manufacturing and distributing false invoices and financial statements. The district court found that neither Hammans nor Hill had any knowledge concerning such an issue, and therefore their testimony would not have been of any consequence to the determination of the central issue presented. We agree. The simple fact that Hammans and Hill did what many other representatives of leasing companies did sheds no light on the question of motivation of the appellant.
 
 
 7
 We find from the record before us a plenitude of evidence that the information supplied by the appellant to the leasing companies was false. Accordingly, the testimony disallowed by the court was in fact duplicative and would have been of no help in the decisional process.[3]
 
 
 8
 The appellant next asserts that the district court committed reversible error when it failed to instruct the jury on the defense of good faith. It is well settled in this circuit, as in other circuits, that a defendant is entitled to an instruction to be submitted to the jury of any theory of defense for which there is a foundation in the evidence. See United States v. Hicks, 748 F.2d 854, 857 (4th Cir.1984). We find that there was no such foundation here laid, and accordingly, the denial of the appellant's proffered instruction was not error.
 
 
 9
 The appellant's two further allegations of error are without merit. The judgment of the district court is hereby
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Cobb testified in this case under a plea agreement with the Government. In that agreement, Cobb pleaded guilty to three counts of wire fraud
 
 
 [2]
 Much of the invoiced equipment did not even exist. The appellant and Cobb had previously made it appear that a company had sold certain pieces of chiropractic equipment to Cobb's clinics. Most of the invoiced equipment was equipment already owned by Cobb and his clinics and therefore the invoices represented an inflated representation of the amount and value of equipment owned by Cobb
 
 
 [3]
 The appellant argues that the testimony excluded was important to his defense as it would tend to show that transactions were completed by persons who knew that the appellant had overvalued property listed on the invoices. We find this without merit. If, as the jury found, the appellant knowingly and intentionally misrepresented material facts to secure money, he was in violation of the federal fraud statutes