**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

RAYMOND CHERISSON, a/k/a Haitian
James,
Defendant-Appellant.

No. 95-5852

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CR-94-97-BO)

Argued: July 19, 1996

Decided: September 10, 1996

Before ERVIN, Circuit Judge, and BUTZNER and PHILLIPS,
Senior Circuit Judges.

_____

Affirmed by unpublished opinion. Senior Judge Phillips wrote the
opinion in which Judge Ervin and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** J. Lee Carlton, Jr., Raleigh, North Carolina, for Appel-
lant. William Arthur Webb, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United
States Attorney, Christine Blaise Hamilton, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Raymond Cherisson was convicted on one count of conspiracy to distribute cocaine base in violation of 21 U.S.C.§ 846 and three counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). He now challenges those convictions on several grounds. We find no reversible error and affirm his convictions.

I.

Cherisson came to Florida from Haiti in 1979 and has spent most of the intervening years working at various hotels and other businesses, mostly in the Orlando area where he has lived in recent years with his girlfriend, Valinda Justice, and their children. Following his arrest in Miami as he got off a plane from Haiti, he was charged in the Eastern District of North Carolina with participating in an extensive cocaine conspiracy centered in Smithfield, North Carolina. The indictment charged numerous conspirators with various kinds and degrees of participation in the Smithfield conspiracy between 1988 and 1994. As to Cherisson, the indictment charged that he participated in the conspiracy from June, 1993 to June, 1994 and additionally with several specific acts of distribution of cocaine base during that year.

The government's evidence against Cherisson at trial included a small but significant amount of documentary evidence and extensive co-conspirator testimony. It tended to show that Cherisson brought large quantities of cocaine from Florida to North Carolina on a regular basis in 1993 and 1994 and perhaps earlier as well, and that he then distributed the cocaine, generally in the form of cocaine base, to several local dealers in Smithfield. Cherisson's defense was that he simply had had nothing to do with cocaine anywhere or anytime and that, with very minor exceptions, he had been in Florida and Haiti throughout the period during which he was supposed to have been

2

distributing drugs in North Carolina. Testifying in his own defense, he claimed that he had come to North Carolina exactly three times in his life before his 1995 arrest and that these three visits were very brief and entirely innocent. First, in April of 1993, he had come on vacation to see the area at the suggestion of a Smithfield resident whom he had met when she stayed at the Orlando Hyatt Regency where he worked. While on vacation, however, he was arrested on a charge of gun possession and, although he returned to Florida as soon as he was released, he was compelled to travel to North Carolina twice more to make court appearances before the gun charge was dismissed. Both times, he testified, he came solely to make those appearances and promptly returned to Florida. His name became mixed up in the drug case only because he had had the misfortune of consorting with people in Smithfield who turned out to be drug dealers and who used his identity as a convenient, false identity for one of their own. Those same dealers were now fabricating their testimony against him in order to get their own sentences reduced.

At trial, Cherisson's testimony, the testimony of his girlfriend, and the extremely brief and skeletal testimony of a co-worker were the only evidence brought to counter the government's rather strong evidence of Cherisson's guilt. Just before and then repeatedly during trial, Cherisson's lawyer insisted that crucial documentary evidence from Florida would corroborate Cherisson's alibi. The district court, however, ruled that the lawyer had had ample time to produce such evidence, if it existed, and denied all of Cherisson's requests for continuances. When some of these documents finally arrived at the very close of the trial, the district court heard Cherisson's proffers but excluded the evidence and sent the case to the jury.

The jury acquitted Cherisson on one distribution count and failed to reach a verdict on several others. The jury convicted him, however, on three other distribution counts--one each for August, September, and October of 1993--as well as the conspiracy count. Cherisson now appeals those convictions.

II.

Cherisson's most serious claim is that the district court erred in refusing to give the jury the alibi instruction that Cherisson requested.

3

Cherisson is, of course, correct that he was entitled to an alibi instruction if there was a foundation for that particular theory of defense in the evidence. United States v. Hicks, 748 F.2d 854, 857 (4th Cir. 1984). Thus, given the particulars of this case, he would have been entitled to the instruction if the evidence could have shown or raised a reasonable doubt as to whether he was in Florida or Haiti at least during August, September, and October 1993, the months specified in the three distribution counts of which he was convicted. Further, since the government had little or no evidence of conspiracy other than its evidence of actual distributions and since the evidence of his distributions was ample to sustain the conspiracy conviction as well, any effective alibi evidence for the distribution counts would have been essentially indistinguishable from alibi evidence for the conspiracy count.* We conclude, however, that Cherisson's evidence, considered as a whole, cannot constitute competent evidence of alibi with respect to the distribution counts and thus, a fortiori , with respect to the conspiracy count. Therefore, he was not entitled to an alibi instruction, and the district court did not err.

First, Cherisson's co-worker at the Orlando Hyatt Regency, Marc Charles, testified that Cherisson worked with him there from 1990 to 1993 and that he saw Cherisson at work "every day." Given that Cherisson's charged role in the conspiracy did not begin until June, 1993 and that Charles's testimony said nothing about when in 1993 Cherisson ceased working with him, that testimony did not actually support Cherisson's claim that he was in Florida or Haiti during the charged period.

Second, Cherisson's girlfriend, Valinda Justice, testified that Cherisson had lived with her in Florida from 1990 until the time of his arrest and had worked for various named Florida employers. She also testified that he had traveled to Haiti for months at a time at vari-

_____

*The government makes the untenable argument that there can be no alibi here because a drug conspiracy conviction does not require proof of the defendant's presence at the scene of the distributions. Of course, such presence is not a required element of a drug conspiracy, but where, as here, evidence of such presence is the government's only evidence of conspiracy an alibi defense is obviously available. See United States v. Burse, 531 F.2d 1151, 1153 (2d Cir. 1976).

4

ous unspecified times between 1993 and 1995, although she admitted that she had never accompanied him. Like Charles's testimony, Justice's testimony was far too diffuse to support a specific finding that Cherisson was so continuously in Florida or Haiti as to rule out his being in North Carolina at the crucial times.

Cherisson himself, finally, testified with somewhat greater precision, if not consistency, as to his whereabouts. But, in the end, his testimony too was inadequate to require an alibi instruction. Testifying in an exceedingly confused way, Cherisson at first said that his full-time employment at the Hyatt ended in early 1993, which was before the beginning of his charged participation in the conspiracy. Without suggesting that he meant to change his testimony, however, he later testified that he worked at the Hyatt until early 1994 and, at one other point, that he was still working at the Hyatt at the time of his arrest on the gun charge in April of 1993. He further testified that in 1993 and 1994 he also worked part-time at another Orlando hotel called the Dolphin while still working at the Hyatt. However, Cherisson then also proffered documents that arrived from the Hyatt at the very close of the trial, documents that the district court excluded from evidence but that confirmed that his Hyatt employment did, in fact, end early in 1993, as he originally testified, and not in 1994, as he later testified.

Thus, some of his testimony, taken in isolation, might have supported an alibi instruction. But that part of his testimony conflicted with his initial testimony and with his own proffered documentary evidence, which, although never admitted, made crystal clear that that initial testimony was the only reliable testimony. We think, therefore, that the district court could legitimately have deemed Cherisson's confused testimony inadequate to support an alibi instruction. Certainly, even if the district court's ruling had been technically in error, we would remain convinced beyond a reasonable doubt by Cherisson's own proffered evidence that that error could not have affected any "substantial right" belonging to Cherisson and so was harmless. See Chapman v. California, 386 U.S. 18, 23-24 (1967); Hicks, 748 F.2d 858 (Chapman constitutional harmless-error rule applicable to erroneous refusals to give alibi instructions).

5

III.

In addition to his claim that he was entitled to an alibi instruction, Cherisson contended at trial and contends now that there exists further, ample documentary evidence --records of his employment in Florida, his passport, and miscellaneous other documents--to sustain his claim that he was continuously in Florida and Haiti during the relevant periods of time. From that premise, he argues that his trial was rendered unfair by the district court's refusal to grant a continuance to afford his lawyer adequate time to gather these documents and its refusal to admit into evidence those few documents that did arrive before the end of the trial or, in the alternative, by his lawyer's inexcusable failure to gather all the evidence in time. In short, he claims error in denying a requested continuance, in refusing to admit proffered evidence, and in the provision of ineffective assistance by his attorney.

We cannot address on this direct appeal this particular claim of ineffective assistance of counsel. The record before us is not adequate for the purpose. Specifically, it contains none of the items of evidence whose absence is asserted to have resulted from counsel's ineffective performance. Hence, it is inadequate to permit inquiry into any prejudice caused by their absence. See United States v. Tatum, 943 F.2d 370, 379 (4th Cir. 1991) (inadequacy of record precluded review); United States v. Hoyle, 33 F.3d 415, 418 (4th Cir. 1994) (prejudice required to establish ineffective assistance of counsel).

For essentially the same reason, we must reject any claim of error in denying any continuances that were requested to allow counsel to obtain exculpatory evidence. Not having the suggested documents before us--or any sufficient evidence of their existence and content--defendant cannot show any prejudice resulting from the court's refusal to continue the trial to allow their pursuit. See United States v. Speed, 53 F.3d 643, 644-45 (4th Cir. 1995) (defendant required to show prejudice from denial of continuance in order to secure reversal).

Looking to the claim of error in the district court's refusal to admit certain documentary evidence that was proffered late in the trial, we find no reversible error. The evidence was of such low probative

value that any error in its exclusion was harmless. See United States v. Morison, 844 F.2d 1057, 1078 (4th Cir. 1988) (exclusion of evidence subject to harmless error analysis). A brief review of the evidence excluded demonstrates this. As earlier noted, the documentary records of Cherisson's employment at the Hyatt Hotel in Orlando actually contradict his exculpatory testimony. They show that his employment ended in early 1993, before the beginning date of his participation in the conspiracy, and thus rule out his Hyatt employment as any part of an alibi for the crimes of which he has been convicted. Other employment records proffered by Cherisson excluded covered periods even earlier than the Hyatt records and so are wholly irrelevant.

Other excluded evidence consisted of miscellaneous documents that Cherisson argued would corroborate his claim of alibi. These included such irrelevancies as his girlfriend's lease from 1991, furniture bills from a Florida furniture store from 1991 and 1992, his Florida truck title, and a letter from his girlfriend's mother suggesting that Cherisson was very kind to her and called her on a regular basis. While the excluded evidence did include some items suggesting his presence in Florida at some times during the conspiracy year, they were of minimal if any probative value because of their intermittent quality. They included such items as chiropractor bills that place him in Florida for about a week in October of 1993, a car repair bill that might place at least his truck if not necessarily himself in Florida on one day in March of 1994. The exclusion of this proffered evidence, if error at all, was harmless in context of the total trial.

Because we find no reversible error, we affirm the convictions from which appeal is taken.

AFFIRMED

7