UNITED STATES, Appellee

v

CLARK A. MOORE, Private, U. S. Army, Appellant

15 USCMA 345, 35 CMR 317

No. 18,097

May 7, 1965

*Captain John C. Smuck* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Major George O. Taylor, Jr.*

*Captain John D. Jackson* argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Schuck, Lieutenant Colonel Francis M. Cooper,* and *First Lieutenant Allen I. Olson.*

### Opinion of the Court

KILDAY, Judge:

Tried by general court-martial on charges of robbery and carrying a con- cealed weapon, accused was convicted of the latter disorder but, as to the other crime, the court-martial found

**345**

him guilty only of the lesser included offense of assault and battery. For these violations of Articles 128 and 134, Uniform Code of Military Justice, 10 USC §§ 928 and 934, the court members sentenced accused to bad-conduct discharge, total forfeitures, confinement at hard labor for nine months, and reduction to the lowest enlisted grade. The convening authority approved and a board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence.[1] Thereafter, accused sought relief before this Court, and we granted his petition for review in order to consider a single issue. It concerns the assault count and poses the following question:

> Whether the law officer was required to instruct on alibi.

The facts as to the concealed weapon offense need not be recited, for it was committed separately from the alleged assault, and is not affected by the granted issue. It is the evidence regarding the latter finding that is pertinent to our inquiry, and the same may be simply stated.

Generally, the victim's testimony indicated he had left an establishment known as the Rendezvous Bar about 1:15 a.m. Several men followed him and, immediately outside, they jumped him. The victim was assaulted and, he claimed, his money was taken. He identified accused as one of his assailants. He had also seen one Avila in the bar and identified him as another of the group that attacked him.

A girl who left the bar with the victim partially corroborated his story about the incident, but said she did not know who had committed the assault. She did, however, testify that accused had been in the Rendezvous immediately prior to the incident, and she had also seen Avila. She did not see either of them in the bar when she fled back inside from the attack.

One Muenz, the proprietor of the Rendezvous Bar, was working on the night in question. Although he knew accused, he did not see him in the establishment that evening. Muenz' wife gave similar testimony. She was uncertain whether she might have seen accused at the Rendezvous about 10:00 or 10:30 p.m., but definitely did not see him after midnight. A waiter in the bar affirmed that accused was present until around 11:00 p.m., but thereafter he did not see him.

As a witness in his own behalf, accused stated he spent the early evening hours drinking with friends at the Rendezvous Bar. At about 11:15 p.m., however, he and a companion, a soldier named Jones, left and went to the Mainzer Bar. Although Jones' story severely undercuts accused's claim, the latter asserts they remained at the Mainzer until after 2:00 a.m., where he was apprehended by German police for a separate incident. Accused denied being involved in any attack on the victim of any sort. Indeed, accused testified he had never seen the victim until after he was picked up by the police.

The Rendezvous and the Mainzer establishments were shown to be some four blocks apart, about five minutes walking distance.

Although we have not recited all the evidence in detail, it is apparent from the foregoing that the time and place of an attack on the victim were fixed with some certainty. Indeed, the parties are agreed that no dispute exists with regard thereto. The real point of contest at trial was identifying accused as one of the assailants. The prosecution's evidence, of course, tended to do exactly that. However, if credence is put in accused's story, he was not involved in the attack. Rather, he was at the time drinking with friends at another bar some distance away, where he had been for some two hours prior to the attack and where he remained until perhaps an hour afterward. In short, accused asserted he was elsewhere, and utterly denied any complicity in the assault.

With the evidence in that posture

---

[1] Subsequent to the board of review's decision, the Secretary of the Army directed that separation by undesirable discharge be substituted for the bad-conduct discharge.

when both parties completed their presentations on the merits, the law officer held an out-of-court hearing as to instructions. In the course thereof, he inquired of the defense:

"Do you wish to request an instruction upon alibi?"

Defense counsel advised the law officer:

"Yes sir, I believe it necessary."

However, when the law officer instructed the court-martial, he gave no advice on alibi.

In an early case, this Court stated its unanimous view that instructions on alibi should be:

". . . the subject of a request by defense counsel and that in the absence of a request there is no duty on the law officer to instruct specifically on that defense." [United States v Bigger, 2 USCMA 297, 302, 8 CMR 97.]

Our approach in the *Bigger* opinion is in accord with the well-settled rule in the Federal courts and ▪ the corollary proposition that an accused who does ask for the same, is entitled to have the triers of fact properly and adequately instructed as to alibi when it is in issue. See Goldsby v United States, 160 US 70, 77, 40 L ed 343, 16 S Ct 216 (1895); Dampier v United States, 2 F2d 329 (CA 9th Cir) (1924); United States v Marcus, 166 F2d 497 (CA 3d Cir) (1948); United States v Barrasso, 267 F2d 908 (CA 3d Cir) (1959). See also 53 Am Jur, Trial, § 652; and 23A, CJS, Criminal Law, § 1203.

Those are also the principles that have been applied by boards of review in service cases. See United States v Brown, 4 CMR 342; United States v Martin, 15 CMR 796; United States v Zayas-Gonzales, 31 CMR 370. Particularly, we invite the attention of the interested reader to the *Martin* opinion, which contains a lengthy—indeed, a well-nigh exhaustive—collation of authorities regarding instructions on alibi, and the following discussion thereof which we consider it worthwhile to repeat:

"Alibi (L. 'elsewhere') is a term used to meet the general issue of guilt, and applies particularly to a claim that the accused was elsewhere when the crime was committed. By evidence that he was elsewhere at the time of the commission of the crime, he lays the ground for the necessary inference that he could not have committed the act (People v Schladweiler, 146 NE 525, 315 Ill 353). Strictly speaking, the defense of alibi is not an affirmative defense (Ragland v State, 192 So 498, 238 Ala 587.) Unlike insanity, self-defense, excusable homicide, etc., an 'alibi' defense does not admit the act charged and set up something by way of palliation or excuse. It denies the commission of the offense by the accused by asserting that he was somewhere else at the time (Commonwealth v Stein, 158 A 600, 103 Pa Super 198). Likewise, where the charge is such that the actual presence of the accused at any particular time or place is not essential to the commission of the offense, an instruction on alibi need not and should not be given (see Tomlinson v United States, 93 F2d 652, cert den, 58 S Ct 645; see also 25 Fed Dig 775 (2)). Strictly speaking, alibi evidence is merely rebuttal evidence directed to that part of the prosecution evidence which tends to identify accused as the person who committed the alleged crime.

"But why, we may ask, is a special instruction on alibi either necessary or desirable when a court receives a general instruction to the effect that the court must find the accused took the property with the necessary criminal intent *at the time and place alleged*? If we are to require such a special instruction, are we not adding to the burden of the law officer and contributing to what Roscoe Pound has characterized as the hypertrophy of procedure? The Federal courts themselves have supplied the answer to this question. The answer is that a court should never lose sight of the fundamental rule in criminal procedure that an accused is presumed to be innocent of the offense of which he is charged, and that this is a con-

**347**

tinuing presumption which 'attends him like a custodial spirit throughout the ordeal of his trial, and imposes upon the prosecution the burden of overcoming such presumption by such weight of evidence as will satisfy the minds of the triers beyond a reasonable doubt of the defendant's guilt . . .' (Glover v U. S., 147 F 426, 431). When the accused traverses that part of the charge that he then and there committed the offense by showing that he was not 'then and there present,' the burden of proof does not shift to him, and it is 'not upon the defendants to establish alibis by a preponderance of evidence' (Falgout v U. S., 279 F 513; Glover v U. S., *supra*). General instructions concerning presumption of innocence, burden of proof, and reasonable doubt, 'cannot be regarded as having the effect of informing the jury that the defendants did not assume any burden of proof by adducing evidence tending to prove an alibi' (Falgout v U. S., *supra*). Thus, an instruction on alibi serves to cure any erroneous belief that the accused, by offering evidence tending to prove an alibi, assumed the burden of proving what he attempted to prove (Glover v U. S., *supra*; Falgout v U. S., *supra*; see also, 53 Am Jur, Trial, sec 657; 67 ALR 150; 29 ALR 1157).

"The general rule, supported by the great weight of authority in both the State and Federal courts, is that where the defense of alibi is reasonably raised by the evidence and a request for special instructions on the subject is made, the instruction should be given. . . . Likewise, where the defense is alibi, and there is evidence to justify it, a refusal to give a requested instruction on alibi is reversible error. . . . Also, it is almost universally held that it is not error to fail to instruct on the subject of alibi where no request for such instruction has been tendered." [United States v Martin, supra, 15 CMR at pages 804, 805.]

Our problem, then, is not with the law, which is clear, but with its ap-

plication under the facts of the case before us.

Initially, the Government argues that alibi was not reasonably raised by the evidence and, accordingly, no instructions thereon of any sort were required. We cannot subscribe to that contention. The plausibility of accused's claim, in light of all the circumstances and particularly Jones' testimony, may indeed leave something to be desired. Nevertheless, as this Court has repeatedly stated, it is not our province to " 'apply the law . . . to the evidence . . . and resolve all factual issues . . . against the accused.' " United States v Houston, 15 USCMA 239, 245, 35 CMR 211. The accused flatly denied being present at the scene and any involvement in the attack, explaining that he was at the Mainzer Bar at the time. If the court members were to have believed him, he should have been acquitted, and we cannot say the evidence did not reasonably present the question of alibi.

As an alternative ground, appellate Government counsel also point out that, after the law officer completed his instructions, there being no mention of alibi in the same, he inquired of counsel as to possible "comments or objections" and received a negative reply from the defense. In light of that fact, we are urged to impose a waiver. We decline to do so under the circumstances of this case. See United States v Stephen, 15 USCMA 314, 35 CMR 286. But see also Rule 30, Federal Rules of Criminal Procedure.

True enough, having requested that the law officer instruct the court-martial on alibi, defense counsel should have alerted him to the fact that he had neglected to do so. We cannot emphasize strongly enough our view that the trial is the time and place such matters should be attended to. The purpose of instructions is to pose the controverted questions to the triers of fact so that they may intelligently consider the same under the pertinent principles of law. Needless to say, if the attention of all parties at trial is focused on seeing that this is done, unnecessary ap-

peals and the expense and delay incident thereto may be avoided.

Nevertheless, from the record, it may be seen that the law officer did not expressly indicate, at the time defense counsel made his request, whether he would honor the same. Thus, as appellate defense counsel contend, it is possible counsel took the law officer's omission to charge on alibi as a denial of the request, and an exception to an adverse ruling is not necessary, of course, under military procedure, to preserve the matter for appeal. Moreover, under all the circumstances, where accused's identity and presence at the scene were critical questions, where a timely and proper request to instruct was made, and where either all parties simply failed to notice the omission to do so, or the record otherwise explains the failure of the defense to except to the omission, we are loath to resolve the issue on the basis of waiver.

Finally, the Government asserts that the law officer's other instructions effectively covered the same findings as are involved in the claim of alibi. Thus, our attention is invited to the fact that the law officer's charge required the court members to find beyond reasonable doubt that accused, in conjunction with Avila and two others, committed the offense. Additionally, the Government notes, the law officer instructed on the subject of principals, and aiders and abettors, to the effect that to be guilty one must share the criminal intent and by his presence aid in the commission of the offense. In sum, the Government urges that a finding under such advice necessarily covers the same facts involved in a claim of alibi.

The simple answer to this last contention may be found in the rationale of United States v Martin, supra, to which we subscribe. All factors considered, we do not believe the law officer's advice in the case at bar effectively presented accused's claim of alibi, concerning which he made timely request for special instructions, and which advice he was entitled to have tendered to the court-martial in deliberating upon his guilt or innocence.

We hold, under the facts of this case, that the law officer was required to instruct on alibi. Error prejudicial to accused's substantial rights was committed by omitting to comply with his request for an instruction thereon. The finding of guilty under Article 128, Uniform Code of Military Justice, supra, therefore cannot stand, and must be reversed. The record is returned to The Judge Advocate General of the Army for reference to the board of review for further action not inconsistent with our opinion. The board may reassess a sentence appropriate for the valid concealed weapon conviction, or a rehearing may be ordered on the assault count and the penalty.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The difficulty with the principal opinion is that it misconstrues the reason for the separate instruction on alibi. United States v Martin, 15 CMR 796, which the majority cites with favor, points out that when an accused defends on the ground of alibi, and the triers of the facts are instructed only on the elements of the offense, they might mistakenly conclude the accused has the burden of establishing the alibi. No possibility of such mistake exists here.

The court-martial was explicitly instructed it could not predicate guilt upon mere presence at the scene of the crime. It was advised the specification alleged the accused acted with others; consequently, only "if . . . satisfied beyond a reasonable doubt that the accused committed the offense in conjunction" with these persons, could it "find him guilty as charged." On the other hand, "if . . . satisfied beyond a reasonable doubt that the accused is guilty," but that he did not act with the others, the court-martial was to except the phrase " 'in conjunction with' " from its findings. Later, the law officer instructed the court members on the rule of aider and abettor. He told them that if they were satisfied "beyond a reasonable doubt that the accused aided and abetted" the others in the commission of the offense, they could also find him guilty as charged. Finally, the law officer defined the ele-

349

ments of the lesser offense of assault and battery, and instructed the court-martial it could find the accused guilty of that offense, if "satisfied by legal and competent evidence beyond a reasonable doubt" of each element of the lesser offense, which included the fact that "the accused, without justification or excuse, . . . did bodily harm" to the victim "in a manner" which the court "must specify" in the findings.

Defense counsel has some obligation to monitor the instructions; and if he is satisfied and accepts them without objection, after participating in determining their limits, it is fairly inferable there is no ambiguity in them that might be harmful to the accused. See United States v Ayers, 14 USCMA 336, 342, 34 CMR 116. It is also significant that the court found the accused guilty only of assault and battery by striking the victim " 'in the head with *his* fists.' " (Emphasis supplied.) In my opinion, the law officer's repeated references to the requirement of proof beyond a reasonable doubt, defense counsel's apparent satisfaction with the instructions, and the findings of the court-martial, exclude any fair risk that the court-martial was misled as to the burden of proof by the omitted instruction on alibi.

I would affirm the decision of the board of review.