UNITED STATES, Appellee,

v.

Franklin F. BROOKS, Specialist Four,
U.S. Army, Appellant.

No. 55,212.
SPCM 21393.

U.S. Court of Military Appeals.

Nov. 23, 1987.

For Appellant: *Captain William J. Kilgallin* (argued); *Colonel Brooks B. LaGrua, Major Joel D. Miller, Major Marion E. Winter* (on brief).

For Appellee: *Captain Amaury R. Colon* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Byron J. Braun* (on brief); *Captain George R. Gillette.*

## OPINION OF THE COURT

EVERETT, Chief Judge:

Appellant was tried on two charges at Fort Dix, New Jersey, by a special court-martial composed of officer and enlisted members. Charge I originally contained three specifications alleging violations of a post regulation which prohibits members of the permanent party from "[e]ngaging in actual or attempted personal relationships, associations, or socializing with any trainee or receptee."[1] According to the first specification, on November 16, 1984, Brooks "wrongfully follow[ed] Private First Class Tamera Morris ... into a female latrine" and made sexual overtures to her. Specification 2 alleged "wrongfully massaging the back, breasts, and thighs of Private El Lora Smolko, a female trainee." Charge II alleged an assault upon Private Smolko with intent to commit sodomy.[2]

Appellant pleaded not guilty to all Charges and specifications, and he was acquitted of Charge II but found guilty of the two specifications of Charge I. The court-martial sentenced him to a bad-con-duct discharge. The findings and sentence were approved by the convening authority and affirmed with a short-form opinion by the Court of Military Review. We granted[3] review of this issue:

WHETHER THE MILITARY JUDGE ERRED BY NOT INSTRUCTING THE COURT ON THE DEFENSE OF ALIBI.

I

According to all the evidence, Brooks had been on duty at the post gymnasium on November 16 and had received a work detail of four female trainees. The Government claimed that at about 3:00 p.m., when appellant and Private Smolko, a trainee, were in the laundry room of the gymnasium, he attempted to make love to her and massaged her back and breasts. Later, after supper and around 7:00 p.m., appellant caught Smolko in the female latrine; massaged her back, breasts, and thighs; and finally unzipped his pants and attempted to have her engage in fellatio with him. He was interrupted when another trainee, Private Morris, entered the latrine, and Smolko departed. Later, according to Morris, appellant made a sexual overture to her; but she rejected his advance and left.

Brooks testified in his own defense that his duty had been to oversee the gymnasium and that, on the morning of November 16, a work detail consisting of four female trainees had been assigned to him. Later that morning, Private Smolko began talking to him "about sex" and also was "brushing up against" him. Finally, Brooks told her that he was going to report her flirtation with him to her platoon sergeant. After lunch, Smolko "continued her attempts and tried to come on to [appellant] again in the hallway." Once more he

---

1. *See* para. 2–2c(3), Regulation 350–1, Headquarters US Army Training Center and Fort Dix, dated February 1, 1984. The prohibition "includes, but is not limited to, touching of a sexual nature, dating, or kissing trainees or receptees or attempting or soliciting to do these things with trainees or receptees."

2. The third specification, which alleged that appellant also had violated the post regulation "by wrongfully rubbing his body against Private" Smolko, was dismissed by the military judge at an Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a), session prior to trial as multiplicious for findings with Charge II.

3. Counsel should insure that the appropriate "Conclusion" is included in their brief on the granted issue. Here, counsel requested the Court to grant his petition.

"told her to stop it and" said he "was going to report it to her platoon sergeant." Still later, at about 4:45 p.m., as he passed the latrine, "Smolko jumped out the door and she almost half scared me to death." Then "[s]he grabbed me by my penis and tried to pull me into the female latrine." Brooks rebuffed her advance and "told her" that he "was going to report her for a violation of" the post regulation. According to Brooks, Private Morris had not been present when Smolko accosted him in the afternoon and tried unsuccessfully to pull him into the latrine. He denied that he had been in the women's latrine around 7:00 p.m. when both Smolko and Morris said that he was present.

Joe Morris Jones, a civilian, testified that when he "was in the military he used to live in the same building as" appellant near the gymnasium. About 5:00 p.m. on November 16, he visited the gym to see Brooks and make a phone call. Two females came back from supper, and Brooks told them to go clean the latrine. Except for going outside with some trainees to get some tables, appellant remained in the front part of the gymnasium until around 7:00 p.m., when the trainees left and Brooks secured the doors. According to Mr. Jones, for Brooks to accost Smolko and Morris in the female latrine at 7:00 p.m. was "impossible because he was never back in the rear. He was always in the front of the gym." Moreover, when the females left that evening, their attitude towards Brooks was friendly, and Jones saw "no hint of tension or nothing like that."

Private Martin Rodriguez testified that on November 16 he was a trainee at Fort Dix and had been part of a detail at the gymnasium. From 6:00 to 7:00 p.m., when this detail left the gym, Brooks had been with them "in the front area" of the gymnasium. He did not remember seeing any female trainees in the gym. Private Randall Fike had also been on this detail at

the gym from 6:00 to 7:00 p.m.; and appellant had been supervising the detail. Brooks had been in the front part of the gym except for a short interval during which he and Fike had gone to get some tables.

Prior to findings, the defense asked for an instruction on alibi, which had been previously furnished to the military judge and was a copy of instructions contained in the military judge's bench book.[4] The judge responded:

> The only time I would give [a] defense of alibi [instruction is] if the evidence tends to establish that the accused was· not at the scene of the offenses charged ... [T]he witnesses all testified he was in the gym from 0630 until 1900 that night; is that not the scene of the offense?

Defense counsel responded that

> the specific area where the offenses allegedly occurred w[as] in the female latrine, and those offenses allegedly occurred around 1900 hours. We presented three witnesses who have testified that Specialist Brooks was in the front area of the gym at 1900 hours ... Although he was in the gym in the general area, he was not in the specific area that the government alleges—where the government alleges he was; and, for that reason that is why I request the instruction.

When the military judge commented that he was unsure whether the defense felt "an instruction on alibi is essential to their case, particularly since the accused denied that the offenses occurred[,]" defense counsel explained that "the Government's witnesses are saying that they did happen and as such, when someone presents an alibi defense, to begin with, he is denying that he committed the offenses because he wasn't there to commit them."

Trial counsel stated that he "believe[d] the defense is viewing the alibi instruction

---

4. Apparently this request was not included as an Appellate Exhibit, as it should have been, in assembling the record of trial. Therefore, we do not have the precise language before us; but we infer that it corresponded to paragraph 5–13, DA Pam. 27–9, Military Judges' Bench Book (May 1, 1982).

too broadly and we would agree that there is no alibi here [because appellant] admits that he was in the area at the time that these offenses occurred." Thereupon, the judge denied the requested instruction and remarked, "I can't see where you can separate the gymnasium office and say that the latrine is a separate entity from the gymnasium." The military judge then mentioned that the Military Rules of Evidence require notice to be given of any alibi witnesses; but defense counsel responded that the Government had been informed of his "alibi witnesses well in advance."

## II

## A

The Manual for Courts-Martial, United States, 1984, contemplates that ordinarily the military judge must instruct on an issue raised at trial, if he is requested to do so by counsel. *See* R.C.M. 920(c), Discussion. For these purposes "[a] matter is 'in issue' when some evidence, without regard to its source or credibility, has been admitted upon which the members might rely if they choose." *See* R.C.M. 920(e), Discussion.

Alibi—which in Latin means "elsewhere" —is a term applied to an accused's claim that he was at another place when the crime was committed. *See United States v. Moore*, 15 U.S.C.M.A. 345, 347, 35 C.M.R. 317, 319 (1965). By introducing evidence that he was elsewhere at the time, the accused provides a foundation for the inference that he could not have committed the crime. Although alibi is not an affirmative defense—which excuses, justifies, or mitigates an accused's action—it is well settled that, if the issue is raised, a requested instruction on alibi should be given. *Ibid; see also United States v. Jones*, 7 M.J. 441, 443 (C.M.A.1979).

As was stated in *United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir.1976), regarding such a requirement:

The reasoning behind this rule is not difficult to appreciate. Jurors are, by definition, untrained in the specifics of the law and, accordingly, must be instructed as to

the legal standards they are bound to apply. In those cases where an alibi defense is presented, there exists the danger that the failure to prove that defense will be taken by the jury as a sign of the defendant's guilt.

Of course, failure to establish an alibi does not properly constitute evidence of guilt since it is the burden of the government to prove the complicity of the defendant, not the burden of the defendant to establish his innocence. That, however, is a point with which we cannot expect jurors to be familiar.

While jurors are apprised in general terms of the government's burden to prove each element of the charged offense beyond a reasonable doubt, this broad admonition as to the government's obligations will not suffice under circumstances such as those here. Even when the jury has been instructed as to the government's burden, there remains the danger that the effect of the attempted alibi defense will be misunderstood. Only a specific instruction can insure that this problem will not occur.

█ In determining whether to grant a requested instruction on alibi, the judge must not weigh the credibility of the alibi evidence. As this Court remarked in rejecting a government contention that alibi had not been reasonably raised by the evidence:

The plausibility of accused's claim, in light of all the circumstances and particularly Jones' testimony, may indeed leave something to be desired. Nevertheless, as this Court has repeatedly stated, it is not our province to "apply the law ... and resolve all factual issues ... against the accused."

*United States v. Moore, supra* at 348, 35 C.M.R. at 320.

Similarly, in *United States v. Hicks*, 748 F.2d 854 (4th Cir.1984), the Court of Appeals ruled that a requested alibi instruction should have been given, even though the only evidence of alibi presented to the jury was contained in defendant's pretrial

statement to the police which the Government had introduced at trial. As the Court of Appeals explained:

It is settled law in this circuit as well as in other circuits that, at least upon proper request, a defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence. *See, e.g., United States v. Mitchell*, 495 F.2d 285, 287–88 (4 Cir.1974); *United States v. Fountain*, 642 F.2d 1083, 1095 (7 Cir.), *cert. den.* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *Zemina v. Solem*, 438 F.Supp. 455, 468 (D.S.D.1977), *aff'd* 573 F.2d 1027 (8 Cir.1978); *United States v. Burse*, 531 F.2d 1151, 1153 (2 Cir.1976); *United States v. Garner*, 529 F.2d 962, 970 (6 Cir.1976).

\* \* \* \* \* \*

"If the trial judge evaluates or screens the evidence supporting a proposed defense, and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant. This is impermissible."

*Id.* at 857–58, quoting *United States v. Strauss*, 376 F.2d 416, 419 (5th Cir.1967).

In *United States v. Webster*, 769 F.2d 487 (8th Cir.1985), the only evidence of alibi was provided by the defendant's mother who testified as a government witness. Nonetheless, the Court of Appeals concluded that a requested instruction should have been given, because:

Although her [defendant's mother] testimony was admittedly not precise with respect to the time, we think her testimony that appellant was asleep "all morning" was sufficient to put into question whether appellant was present at the scene of the ... [crime].

*Id.* at 490.

■ In this case, the military judge considered the gymnasium to be the scene of

the offenses; and so he concluded that no defense of alibi existed because Brooks himself admitted that he had been at the gymnasium all during the day. This view of alibi was too restrictive. Distance is immaterial so long as it is sufficient to show that the defendant was too far away to have committed the offense. Even if the government evidence shows that a crime has occurred in one room of a two-room building, the defense of alibi would be raised if there is evidence that the accused was always in the other room.

Thus, in *United States v. Jones, supra* at 443, this Court ruled that the military judge was obligated to give a requested alibi instruction when the defense was raised by the evidence because the accused there denied being in the room where the larceny occurred, although he admitted having been in the same building. The Court also commented that "we do not believe the evidence must account for the entire period in question to raise the issue of alibi." *Id.* at 443.

■ Clearly, appellant was entitled to an instruction on alibi with respect to the incident involving Private Morris (specification 1 of Charge I). According to the government evidence, this took place around 7:00 p.m. in the female latrine located in the gymnasium; and Brooks offered his own testimony as well as that of other witnesses to the effect that at the time he was in a different area of the building. As to specification 2, which concerns massaging the back, breasts, and thighs of Private Smolko, the situation is more complicated. One contact of this nature occurred immediately before the alleged incident with Private Morris. However, according to the government evidence, appellant had already wrongfully massaged Private Smolko at about 3:00 p.m. Since specification 2 alleges that the offense took place "on or about 1500 hours," it obviously concerned this earlier incident.[5]

---

5. The events at 7:00 p.m. which involved Private Smolko, were apparently the subject of Charge II, alleging assault with intent to commit sod-

omy—of which Brooks was acquitted—and of specification 3 of Charge I (*see* n. 2, *supra*).

■ Appellant's contact with Private Smolko in the late afternoon did not raise the defense of alibi. Both Brooks and Private Smolko testified that they had been in intimate proximity at the time. The only question was who was the aggressor. Accordingly, the alibi defense was not raised as to specification 2, and as to it, there was no occasion to give an alibi instruction.

### B

■ Since the military judge erred in denying an alibi instruction with respect to specification 1 of Charge I [6], we must consider whether Brooks was prejudiced by that error. Apparently, the test of prejudice is strict. Thus, in *Hicks*, the Court of Appeals concluded that failure to give a requested alibi instruction deprived the defendant of Sixth Amendment and due process rights and required reversal.

> Failing to give the jury an alibi instruction was thus an error of constitutional magnitude, and under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), we can sustain Hicks' conviction only if we can say that the error was harmless beyond a reasonable doubt.

748 F.2d at 858. In *United States v. Webster, supra* at 490, the Court of Appeals seems to have used a similar test—although it concluded that the error was harmless.

■ Even if we apply a more lenient standard of review, we are convinced that appellant was prejudiced as to specification 1. In this connection, we note that the absence of a requested alibi instruction has usually been considered harmless only "when the evidence of the defendant's guilt has been overwhelming or when the evidence in support of the alibi defense has been negligible or when the defendant's presence at the scene of the crime has not been an element of the offense which the government was required to prove." *United States v. Burse*, 531 F.2d at 1153. Even though the prosecution offered alleged eyewitnesses, their truthfulness was vigorously attacked by the defense, which claimed that Private Smolko and the other trainees had joined in making false accusations against appellant in order to discredit him and to protect Smolko, if he reported her misconduct to anyone. The defense evidence was substantial and included the testimony of appellant himself and of corroborating witnesses. Accordingly, we are unpersuaded that the judge's error in denying the requested instruction was harmless.

### III

The decision of the United States Army Court of Military Review as to specification 1 of Charge I is reversed; the finding of guilty thereon is set aside; the record of trial is returned to the Judge Advocate General of the Army for remand to that court, which may dismiss specification 1 and reassess the sentence or order a rehearing on sentence based on the remaining findings of guilty, or authorize a rehearing as to specification 1 of Charge I and the sentence.

Judges COX and SULLIVAN concur.

---

6. He also should have given such an instruction as to Charge II; but since appellant was acquitted of that Charge, omission of the instruction obviously was not prejudicial.