**UNITED STATES, Appellee,**

v.

**Specialist Sharon R. RANKINS, 166–54–0193, United States Army, Appellant.**

**ACMR 9100083.**

U.S. Army Court of Military Review.

24 May 1991.

972

For Appellant: Captain Emmett G. Wells, JAGC (argued), Lieutenant Colonel Russell S. Estey, JAGC, Captain James M. Heaton, JAGC (on brief).

For Appellee: Captain Steven M. Walters, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Patrick A. Hewitt, JAGC (on brief).

Before De GIULIO, NAUGHTON and VARO, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by special court-martial composed of officers and enlisted members. Contrary to her pleas, she was found guilty of one specification of missing movement through design in violation of Article 87, Uniform Code of Military Justice, 10 U.S.C. § 887 (1982). She was sentenced to a bad-conduct discharge and confinement for thirty days. The convening authority approved the sentence.

The question before us is whether the military judge was required to instruct the court members on the defense of duress, even though appellant's belief that she was under duress was irrationally held. In this case, we hold that the military judge properly refused to instruct the court on duress, and affirm.

Appellant and her husband were active-duty soldiers stationed at Fort Lewis, Washington. Appellant was aware of a soldier who had died of a heart attack while that soldier's spouse was in the field. Appellant believed the death had not been discovered for two days and the deceased's child, who was with the deceased, was found severely dehydrated. During the course of appellant's duties she was required to perform field duty at Yakima Firing Center. While at Yakima, appellant was returned to Fort Lewis after she had been notified that her husband was hospitalized for what she described as a heart attack. Her husband described his condition as atrial fibrillation and high blood pressure. Appellant's husband was eventually released from the hospital, cleared

for regular physical training, and cleared for deployment.[1]

Just prior to the offense which is the subject of this court-martial, appellant was alerted for movement of her unit for field duty at Fort Hunter Liggett, a military reservation in California. Appellant informed her superiors that she would not go to the field. In an attempt to convince her that she should deploy with her unit, her superiors met with her. She told them that she did not want to repeat the experience of Yakima. At that time, she gave no other reason for not wanting to go to the field.

After the meeting, appellant stated that she hated the field because she could not get a daily shower, moves were constant, it was cold, she had to sleep in a tent with male soldiers, and she did not like the latrine facilities. Appellant's husband attempted but failed to convince her that she should deploy. Because it was perceived that appellant was out of control, a chaplain was called to talk to her. The chaplain, in testimony for appellant, stated that, although appellant discussed with him her husband's health, the primary reason she didn't want to go to the field was because it was unpleasant. He testified that she did not want to go to the field and stated a series of arguments for not having to do so. The chaplain described her position as "[w]hen someone is radically immature ... you become almost irrational, your focus becomes very very select and narrow ... You just don't have in your mind a choice of any option." Because appellant stated she would do anything to stay out of the field, he accompanied her to the emergency room to have her examined, although he did not believe her to be a suicide risk. It was found that appellant did not have "suicidal thoughts/gestures." Appellant stated to the examining physician that she did not want to go to the field because she didn't like it; when in the field it did not feel right, and she would not leave her husband.

Needless to say, appellant did not deploy with her unit. Some time after the unit's deployment, appellant stated that she could not deploy because of her fear that her husband would have a heart attack and that she would not be there to help him or save his life.

At the appropriate time at trial and based upon these facts, the defense requested an instruction on duress. Refusing to give the instruction, the military judge stated,

> Several things bother me about this ... I could understand it if there's a physical harm threatened to either the accused or a member of his (sic) family. I could understand that—then it may be raised. If that was immediate. Okay. All we have here, at the very best, is some speculation. There is nothing immediate about it.

When the instruction was again requested, he stated,

> Without belaboring it any further, I don't even want to discuss it because a reasonable man, based upon these facts, would have no reason in fact to believe at all, in my opinion, that there would be any, let alone immediate, bodily harm in this case to her husband. That's pure speculation, however you look at it, especially under the facts of this case.

■ Duress is raised as a defense where an accused acts under a reasonably grounded fear of immediate death or serious bodily injury, to either himself or to his immediate family. *United States v. Palus,* 13 M.J. 179 (C.M.A.1982); *United States v. Jemmings,* 1 M.J. 414 (C.M.A.1976). It has also been stated that the apprehension of death or serious bodily harm must be well grounded. *United States v. Pinkston,* 39 C.M.R. 261, 262 (C.M.A.1969). Using these rules, we must determine if the defense of duress was raised by the facts presented at trial, for if the defense was raised, the military judge was required to instruct the court on that defense.

[1]. Subsequent to this event but prior to trial, appellant's husband was cleared for deployment to Saudia Arabia.

 A defense is raised when the record contains some evidence to which the factfinders may attach credence. *United States v. Watford*, 32 M.J. 176, 178 (C.M.A. 1991); *United States v. Simelkjaer*, 40 CMR 118, 122 (C.M.A.1969). A judge is not obligated, however, to assist a jury in coming to an irrational conclusion. *United States v. Jackson*, 12 M.J. 163, 167 (C.M.A. 1981) (citing *Driscoll v. United States*, 356 F.2d 324, 327 (1st Cir.1966), *vacated on other grounds*, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968)). Appellant is not entitled to an instruction on duress unless she can establish "(1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) lack of a reasonable opportunity to escape the threatened harm." *United States v. Beltran–Rios*, 878 F.2d 1208, 1213 (9th Cir.1989). In the case before us the fear of appellant that her husband would have a heart attack while she was in the field was not well grounded. Even in the eyes of witnesses on her behalf, her belief was irrational. Her belief was unreasonable and not well grounded. Further, appellant failed to produce evidence that the threat of a heart attack was immediate. The threat to her husband was mere speculation. Under these circumstances, we hold that the defense of duress was not raised by the evidence. The military judge did not err by failing to give the instruction on duress.

 Assuming *arguendo* that the military judge erred by not giving the instruction, we must determine if appellant was prejudiced. Failure to give an instruction on a special defense can be of constitutional magnitude. *United States v. Brook*, 25 M.J. 175, 180 (C.M.A.1987). Therefore, the conviction can only be sustained if we can say that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We have considered the evidence in this case, to include, that appellant did not like field duty because she could not shower daily, did not like the latrine facilities, and did not like sleeping in a tent with men. We also considered the evidence that appellant would do anything to avoid field duty, that she did not tell her superiors of her fear of her husband having a heart attack until after she missed movement, and the testimony that her position in this matter was irrational. Considering all the evidence, we hold that the error was harmless beyond a reasonable doubt. *See United States v. Remai*, 19 M.J. 229 (C.M.A.1985).

The remaining assignments of error to include those personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are also without merit.

The findings of guilty and the sentence are affirmed.

Judge NAUGHTON and Judge VARO concur.