**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 02-2441

PATRICK J. MCGONAGLE,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

No. 02-2467

STEPHEN BURKE,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

No. 03-1048

ANTHONY SHEA,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

No.  03-1055

MATTHEW MCDONALD,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

No.  03-1227

MICHAEL K. O'HALLORAN,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

─────────────

[Hon. Steven J. McAuliffe, U.S. District Judge]

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

─────────────

Before

Boudin, Chief Judge,
Torruella and Lynch, Circuit Judges.

─────────────

Patrick J. McGonagle, Stephen Burke, Anthony Shea, Matthew McDonald and Michael K. O'Halloran, pro se, on memoranda in support of applications for a certificate of appealability.

─────────────

July 8, 2005

─────────────

**Per Curiam**.  These are five pro se applications for a certificate of appealability (COA), filed by petitioners Anthony Shea, Matthew McDonald, Stephen Burke, Michael O'Halloran, and Patrick McGonagle.  Petitioners were convicted at a joint trial of various offenses related to a series of bank and armored-car robberies and were sentenced to lengthy prison terms.  Except in one minor respect, this court affirmed their convictions and sentences on direct appeal.  United States v. Shea, 211 F.3d 658 (1st Cir. 2000).  Petitioners then filed petitions under 28 U.S.C. § 2255 advancing an assortment of claims, mostly under an ineffective-assistance-of-counsel rubric.  The district court denied relief in a comprehensive opinion and later declined to certify the appeals.  Our task is to determine whether petitioners have raised one or more claims that are debatable among jurists of reason.  See, e.g., Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  Finding that they have not done so, we deny the COA applications substantially for the reasons enumerated by the district court, adding only the following comments.

1.  Petitioners complain that the district court allowed the jurors to take written copies of the jury instructions home with them, especially prior to closing arguments. At the outset of trial, the court informed the jurors that they would receive a written copy of the instructions at the appropriate time.  At the close of evidence, and with the acquiescence of all parties, the

-3-

court chose to deliver the jury charge before the attorneys delivered their closing arguments. On that date (a Monday), the jurors were each given a written copy of the 94-page set of instructions, which the court proceeded to read to them out loud. The jurors were then excused for the day with the following directives: that they could take the written copies of the charge home with them; that if possible they should "try to familiarize" themselves with the instructions when they had "a chance to be quiet and think about" them; that they could make personal notes on the written copies; and that they should not discuss the charge with anyone. Closing arguments consumed the next three days, and deliberations began on Friday morning. The jurors thus were in possession of the written charge for four days (and evenings) before actually starting to deliberate.

Petitioners do not now complain about written copies of the charge being provided to the jury--a practice endorsed by this court. See, e.g., United States v. Parent, 954 F.2d 23, 24 n.1 (1st Cir. 1992). Nor do they complain about the charge being delivered before closing arguments--a practice endorsed by Fed. R. Crim. P. 30(c).[1] Instead, they argue that the procedure followed here made it likely that one or more jurors consulted a dictionary or other reference material while reviewing the instructions--a form of

_____

[1] Rule 30(c) provides: "The court may instruct the jury before or after the arguments are completed, or at both times." Our Parent decision does not affect the operation of this rule.

misconduct that in their view would amount to "structural error." They fault trial and appellate counsel for not objecting to this procedure, and they fault the habeas court for not undertaking a suitable factual inquiry.

This claim fails because it is entirely conjectural. Petitioners have adduced no evidence suggesting that such consultation of extrinsic materials occurred. Nor is there any particular reason to suspect that the court's procedure significantly enhanced the likelihood of such an occurrence. For one thing, the concern voiced by petitioners is not limited to situations where jurors have been allowed to take a written charge home with them. Even if the charge had only been delivered orally, or even if a written charge had been distributed for use only in the jury room, the possibility would still arise that a juror would remember or write down specific words or terms to be researched at home. For another thing, while petitioners are correct that the court gave no cautionary instructions in this regard when delivering the written charge to the jury, it did give explicit such directives at the outset of trial.[2] Although considerable time thereafter elapsed before the written charge was distributed, "[a]ppellate courts ordinarily presume that a jury will follow the

_____

[2] During its preliminary instructions, the court admonished the jurors not to "engage in any outside reading of the case," "investigate the case on their own," "educate [themselves] on any of the subjects that might come up," or "do any outside investigative work, preparation, study, anything like that."

trial judge's specific instructions." United States v. Bradshaw, 281 F.3d 278, 292 (1st Cir. 2002). And the court instructed the jurors on the later date to follow "all of the instructions that I gave during the course of the trial" and to decide the case based "solely on the evidence received at trial."

On this record, the habeas court did not err in rejecting petitioners' attempt to interrogate the jury members. When juror misconduct is alleged, "a convicted defendant cannot lay claim to a constitutional right to cross-question jurors in the absence of an adequate evidentiary predicate." Neron v. Tierney, 841 F.2d 1197, 1205 (1st Cir. 1988) (habeas); accord, e.g., United States v. Connolly, 341 F.3d 16, 34 (1st Cir. 2003) (holding on direct appeal that court should only permit post-verdict interrogation of jurors "when reasonable grounds for investigation exist, i.e., there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant") (internal quotation marks omitted); Taylor v. Mabry, 593 F.2d 318, 320 (8th Cir. 1979) (per curiam) (holding in habeas case that request for jury interviews was properly denied where allegations of misconduct were "speculative"; petitioner was "requesting permission to conduct a fishing expedition") (quoted in Neron, 841 F.2d at 1206).[3]

---

[3] Petitioners' analogy to cases involving "structural error" is also misplaced. See, e.g., United States v. Rogers, 121 F.3d 12, 17 n.5 (1st Cir. 1997) ("Courts that have considered the issue

Petitioners also complain that the challenged procedure encouraged jurors to start deliberating individually before actually convening in the jury room.[4] Yet as the district court noted, there is nothing wrong with jurors engaging in "mental deliberations" during trial--in the sense of weighing evidence, assessing credibility, and the like--so long as they do not make up their minds about guilt or innocence until the appropriate time. Moreover, this same objection could be voiced whenever the charge preceded closing arguments. Petitioners' grievance thus effectively amounts to a challenge to that sequence of events-- which, as mentioned, is specifically endorsed by Fed. R. Crim. P. 30(c).

2. Petitioners also fault their counsel for failing to request, or object to the absence of, an alibi instruction. At trial, Burke, O'Halloran, and McGonagle had each sought to establish alibis regarding one or more of the offenses (mainly the Hudson robbery). The habeas court rejected this claim for lack of prejudice, citing three factors. First, the jury was properly instructed on the presumption of innocence and the government's

---

of juror dictionary use have not generally considered such use to be prejudicial per se.").

[4] It is argued that the jurors' review of the charge on Tuesday evening could have been especially prejudicial, since they had only heard closing argument from the government by that time. Yet defense counsel reasonably asked to wait until Wednesday to begin their arguments, in order to avoid facing a fatigued jury.

burden of proof. Second, counsel for petitioners, where appropriate, addressed the alibi issue in their closings. And third, the jury appears to have credited McGonagle's alibi defense to the carjacking charge, insofar as its acquittal rested on a conclusion that he was not physically present.[5]

While we think such analysis suffices to dispose of the instant claim (particularly given the lack of rebuttal from petitioners), we elaborate slightly as follows. The concern in this area is that the jury will mistakenly believe that a defendant's failure to prove an alibi defense is evidence of guilt--i.e., that the burden shifts to the defendant to prove an alibi, rather than remaining with the government to disprove it. This court, while declining to adopt any per se rule, has stated that "alibi instructions should contain adequate safeguards against jury confusion and should indicate that the burden of proof remains on the government despite disbelief of the alibi witnesses." United States v. Fortes, 619 F.2d 108, 123 (1st Cir. 1980). Yet the circumstances here minimized any such concern about jury confusion. The district court provided a general instruction about burden shifting, stating:

---

[5] The district court relied on United States v. McCall, 85 F.3d 1193 (6th Cir. 1996), which held on direct appeal that omission of an alibi instruction is not plain error "as long as the jury is otherwise correctly instructed concerning the government's burden of proving every element of the crimes charged, and the defendant is given a full opportunity to present his alibi defense in closing argument." Id. at 1196.

-8-

> The burden is always on the government to prove guilt beyond a reasonable doubt. That burden never shifts to a defendant. The law does not impose upon a defendant in a criminal case the burden or duty to call any witnesses or to produce any evidence.

And the attorneys for Burke and O'Halloran emphasized this point in their closings while discussing alibi evidence.

Even more important, the alibi defenses of the three petitioners in question were insubstantial. Those offered by Burke and O'Halloran, involving general references to daily routines having been followed, were devoid of specificity. Only McGonagle made more than a token effort in this regard, presenting several witnesses that placed him in a neighboring state around the time of the Hudson robbery. Yet this evidence was largely beside the point, since his presence at the Hudson site was not an element of any offense. The jury convicted McGonagle on four counts: conspiring to commit, and aiding and abetting the commission of, robbery and armed robbery. Various courts have held that, because a conspiracy or an accomplice charge ordinarily does not require proof of physical presence at the crime scene, the failure to give an alibi instruction with regard thereto is harmless error (or not error at all). See, e.g., United States v. Thomas, 34 F.3d 44, 50 (2d Cir. 1994); United States v. Agofsky, 20 F.3d 866, 871-72 (8th Cir. 1994). Nor did the prosecution's theory of the case rest on his presence at the Hudson site. Compare, e.g., United States v. Burse, 531 F.2d 1151, 1153 (2d Cir. 1976). And the fact that

-9-

McGonagle was acquitted of the carjacking charge suggests that the jury credited his alibi evidence.

3. In a related argument, McDonald complains about the failure of his counsel to present alibi evidence regarding the Hudson robbery. Yet he acknowledges that counsel twice interviewed the source of such evidence (McDonald's sister). His claim thus fails, since "[t]he decision whether to call a particular witness is almost always strategic." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993); see also Strickland v. Washington, 466 U.S. 668, 690 (1984) ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

4. Petitioners advance a vague complaint involving closure of the courtroom. At times, they seem to argue that the courtroom was closed to the public during the entire voir dire process. Yet the record instead indicates that the courtroom was temporarily closed for a narrower purpose: to investigate a report of tainted venire members. To the extent petitioners are faulting counsel for not opposing this procedure, their claim is unavailing. It is true that the guarantee of a public trial extends to voir dire proceedings. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984). Yet the temporary closure here was likely permissible under the circumstances, especially where "a transcript of the closed proceedings [was made] available within a reasonable

time." Id. at 512. And even if not, counsel cannot be faulted for thinking that private questioning of the two venire members would be more conducive to eliciting candor about a possibly sensitive topic. See, e.g., Horton v. Allen, 370 F.3d 75, 81-83 (1st Cir. 2004) (rejecting similar claim), cert. denied, 125 S. Ct. 971 (2005).

5. McGonagle raises a sentencing issue, challenging the court's reliance on a cross-reference to the guideline for first-degree murder. See U.S.S.G. § 2B3.1(c) (1996) (calling for application of § 2A1.1 if victim was killed "under circumstances that would constitute murder under 18 U.S.C. § 1111" had killing taken place within jurisdiction of United States). On direct appeal, the other four petitioners advanced a similar challenge. They objected that it was unclear who had actually killed the Hudson guards and whether any particular individual had intended to cause their deaths. We responded that § 1111 "was intended to adopt the felony murder rule" and that, under that rule, "the killing of the guards in the Hudson robbery was first-degree murder by those who perpetrated the robbery, regardless of who pulled the trigger or any individual intent." Shea, 211 F.3d at 674; accord, e.g., United States v. Martinez-Bermudez, 387 F.3d 98, 101 n.5 (1st Cir. 2004).

McGonagle argues that a different result should obtain in his case because of his relatively tangential involvement--i.e.,

-11-

because it is unclear that he was even present at the Hudson site. In his view, a defendant who lacked intent to kill and was absent from the crime scene cannot be held liable for first-degree murder at sentencing. As support, however, he relies on inapposite case law involving Eighth Amendment claims in death-penalty cases. See, e.g., Enmund v. Florida, 458 U.S. 782, 797 (1982). His argument overlooks the operation of the felony-murder rule, as explicated on direct appeal, and ignores the fact that physical presence is not necessarily required under an accomplice or conspiracy theory. Instead, as the district court properly noted, the level of a defendant's involvement is accounted for in the commentary to the first-degree murder guideline. See U.S.S.G. § 2A1.1, cmt. n.1; see, e.g., United States v. Hansen, 256 F. Supp. 2d 65, 71-72 (D. Mass. 2003). The district court invoked this provision at sentencing and departed downward accordingly.

6. Petitioners each filed their § 2255 petitions in timely fashion. Some four months later, after the one-year limitations period had expired, they each sought leave to amend to add a new claim. The district court denied such leave on the ground that the new claim did not "relate back" to the original petitions under Fed. R. Civ. P. 15(c) and thus was time-barred. In the alternative, it indicated that, even if timely, the proffered claim would fall short on the merits. The district court's Rule 15(c) analysis has just recently been upheld by the Supreme Court.

See <u>Mayle</u> v. <u>Felix</u>, ___ S. Ct. ___, 2005 WL 1469153 (June 23, 2005).  And its alternative rationale proves equally supportable.  For the sake of completeness, we explain briefly.

Petitioners' new claim faults counsel for failing to present additional impeachment material regarding John Ferguson, one of the government's key witnesses.  On the stand, Ferguson recounted separate conversations he had had with Shea, Burke and McDonald while jointly incarcerated with each of them–-testimony which, <u>inter alia</u>, implicated all five petitioners in the Hudson robbery.  He was cross-examined at length over the course of two days.  In now claiming that such cross-examination was inadequate, petitioners point to Ferguson's appearance shortly thereafter at an unrelated bank-robbery trial in Massachusetts.  <u>See</u> <u>United States</u> v. <u>Balsam</u>, 203 F.3d 72 (1st Cir. 2000).  In particular, relying on a government memorandum filed in a habeas proceeding brought by a <u>Balsam</u> defendant, they complain that Ferguson was there impeached on various grounds that were never raised at their own trial.

This argument fails because there is no reasonable probability that the results of the trial would have been different had Ferguson been impeached more extensively.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Bagley</u>, 473 U.S. 667, 682, 685 (1985) (plurality and concurring opinions); <u>Strickland</u>, 466 U.S. at 694.  In part, this is because of the extent to which he <u>was</u> impeached at petitioners' trial.  In addition to recounting his extensive criminal

-13-

background, Ferguson there admitted, <u>inter alia</u>, to the following: suborning perjury before several grand juries; testifying falsely during a civil deposition; uttering myriad falsehoods under an array of circumstances; and making inaccurate and incomplete statements while being interviewed by investigators.  The key impeachment items presented for the first time at the <u>Balsam</u> trial appear to be a pair of false affidavits, the circumstances surrounding which are not explained.  Regardless, such additional evidence of Ferguson's mendacity would have been largely cumulative of that adduced at petitioners' trial.

In any event, even if Ferguson's testimony were discounted, the amount of other incriminatory evidence was substantial.  For example, all five of the petitioners were implicated in the Hudson robbery by one or more other witnesses.[6] Indeed, an analogous claim arose on direct appeal, involving new evidence that might have further impeached John Burke (a named defendant turned cooperating witness).  In rejecting this claim, we noted the following:

> The evidence against the defendants was substantial and rested on a number of witnesses, much forensic evidence, and a series of admissions and co-conspirator statements.  Further, John Burke was extensively impeached ... [regarding] subjects that might fairly cast doubt on his veracity.

---

[6]  We take particular note in this regard of the testimony of Steven Connolly, Edwin McDonald, James Tracy, Michael Yandle, and David Kelley.

> The outcome would not have changed [had the new material been used].

Shea, 211 F.3d at 675-76.  The instant claim fails for similar reasons.

7.  McDonald seeks to amend his COA application to advance a claim under Crawford v. Washington, 541 U.S. 36 (2004). It is doubtful that Crawford applies retroactively to cases on collateral review.  See, e.g., Murillo v. Frank, 402 F.3d 786, 789-91 (7th Cir. 2005).  It is also doubtful that the hearsay remarks cited by McDonald constitute "testimonial" statements within the reach of Crawford.  See, e.g., Horton, 370 F.3d at 84.  We need not resolve these matters, however, since "a party may not unveil an argument in the court of appeals that he did not seasonably raise in the district court."  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  While an appellate court does have discretion to overlook this rule "in an exceptional case," Castillo v. Matesanz, 348 F.3d 1, 12 (1st Cir. 2003), the instant cases cannot be so characterized.  Whether McDonald or the other petitioners might be able to file a second or successive petition seeking relief under Crawford, should the Supreme Court ever make that decision retroactive to cases on collateral review, is a matter we need not decide.

8.  We have reviewed petitioners' remaining claims and, to the extent not explicitly addressed in the district court's opinion, deem them unworthy of separate comment.

-15-

The applications for a COA are denied, and the appeals are terminated. McDonald's motion for leave to amend his COA application and his motion for appointment of counsel are denied.