IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







AP-75,367






Ex parte LINCOLN ALLEN KEITH, Applicant









Application for Habeas Corpus Relief from

Case A-24,045-B of the 70th District Court of

Ector County





 Per curiam.


 

 The applicant in this case seeks relief under Crawford v. Washington, (1) but his conviction
became final before the decision of that case. Therefore, his ability to obtain such relief depends
on whether Crawford applies retroactively and is thus available on collateral review. Because we
conclude that Crawford does not apply retroactively, we shall deny the requested relief.

The Procedural History

 The applicant was convicted of capital murder in 1995 and sentenced to life
imprisonment. On appeal, he argued that his right to confrontation under the Sixth Amendment
had been violated. He specifically objected that a statement made to police by his non-testifying
co-defendant should have been excluded as inadmissible hearsay. The Court of Appeals held first
that the statement was not hearsay because it was not offered to prove the truth of the matter
asserted, but rather to explain why the officer had focused his investigation on the applicant. The
court also held that the applicant's questioning of the investigating officer about the
circumstances of the interrogation made the entire statement admissible under the rule of
optional completeness (Rule of Evidence 107). (2) Finally, the court held that, if it was error to
admit the statement, the error was harmless.

 The Court of Appeals' decision, however, was issued before the Supreme Court's ruling
in Crawford. Prior to Crawford, Confrontation Clause issues were resolved under Ohio v.
Roberts, (3) in which the Supreme Court held that the statement of an unavailable witness could be
admitted against the defendant in a criminal trial if it bore adequate "indicia of reliability,"
meaning generally that the statement fell under a "firmly rooted hearsay exception" or showed
"particularized guarantees of trustworthiness." (4) Crawford rejected the Roberts standard, making
clear that, in order to be constitutionally sufficient, any system of ensuring the reliability of
testimonial statements must include a defendant's ability to confront the witness. (5)

 In light of Crawford, the applicant now seeks habeas-corpus relief from the conviction
that was based, in part, on the statement of his co-defendant who was not available for
confrontation. The potential success of his claim therefore depends on whether or not Crawford
applies retroactively, and is thus available to the applicant on collateral review. We now turn to
that issue.

The Teague Exception

 The Supreme Court has yet to rule on the retroactive applicability of its decision in
Crawford. However, in Teague v. Lane, (6) the Court established the terms under which its
decisions in criminal cases will apply retroactively. Generally, a new constitutional rule of
criminal procedure will apply to cases still pending on direct review but not to cases that have
become final before the new rules are announced. (7) There are two exceptions to the general rule of
non-retroactivity for cases on collateral review. First, a new rule will be applied retroactively if it
places "certain kinds of primary, private individual conduct beyond the power of [the law] to
proscribe." Second, a new rule will be retroactive if it requires the observance of procedures that
are "implicit in the concept of ordered liberty." (8) The first exception has no bearing on the case
before us, so our analysis will focus exclusively on the second.

 In Teague, the Supreme Court reserved the application of this second exception to so-called "watershed rules of criminal procedure." (9) It adopted the reasoning and language of Justice
Harlan in an earlier case:

Typically, it should be the case that any conviction free from
federal constitutional error at the time it became final, will be
found, upon reflection, to have been fundamentally fair and
conducted under those procedures essential to the substance of a
full hearing. However, in some situations it might be that time and
growth in social capacity, as well as judicial perceptions of what
we can rightly demand of the adjudicatory process, will properly
alter our understanding of the bedrock procedural elements that
must be found to vitiate the fairness of a particular conviction. For
example, such, in my view, is the case with the right to counsel at
trial now held a necessary precedent to any conviction for a serious
crime. (10)


Thus, the second exception to the Teague rule is limited in its application to a very narrow class
of decisions whose effect is to change the law in such a fundamental way that it profoundly calls
into question the fairness of any conviction garnered under the prior rule -- the kind of rules
"without which the likelihood of an accurate conviction is severely diminished." (11) Only in that
situation will such a rule be considered retroactive, and thus available on collateral review.

 From a survey of the Supreme Court's jurisprudence on this issue, it is clear that the
Teague exception can apply in only an extremely narrow class of cases that announce new rules.
Such rules must substantially improve the accuracy of the trial's truth-finding function. Put
another way, the rule must alter our understanding of the bedrock procedural elements essential
to the fairness of a proceeding. (12) It is worth noting that, since Teague, no new rule of criminal
procedure has been found to meet that high standard.

 The Crawford rule is at least concerned with the accuracy of criminal convictions. By
assuring that testimonial statements will not be admitted at trial unless the witness is available to
testify, the rule adheres to the Confrontation Clause's command "that reliability be assessed in a
particular manner: by testing in the crucible of cross-examination." (13) Yet the Court in Crawford
also makes clear that the Clause's goal of ensuring the reliability of evidence is "a procedural
rather than a substantive guarantee." (14) That itself is not dispositive, because either type of rule
might fall under the Teague exception. (15) It is significant, however, because it illustrates that the
Court did not intend to say in Crawford that cross-examination is an inherently better method of
ensuring the reliability of evidence. Rather, Crawford affirms that cross-examination is the only
method of ensuring reliability of evidence that is unquestionably required by the Constitution, so
that any rule that fails to allow it is unquestionably impermissible:

The unpardonable vice of the Roberts test, however, is not its
unpredictability, but its demonstrated capacity to admit core
testimonial statements that the Confrontation Clause plainly meant
to exclude. (16)

 

 The Crawford rule requires a procedure that the Constitution prescribes, not one which is
inherently or necessarily more accurate than the procedure which preceded it. Even if its effect
does marginally improve the chances of accuracy in criminal trials, the degree of difference in
that respect between the old system and the new must be substantially greater in order to meet the
Teague exception.

 For instance, the rule announced by Gideon v. Wainwright, (17) though it preceded the
Teague decision, "usually" has been cited by the Court as the decision which meets the criteria of
the second Teague exception. (18) In that case, which established a defendant's right to court-appointed counsel in criminal proceedings, the Court would likely apply its rule retroactively
because it is obvious that the likelihood of false conviction is substantially greater in a trial where
a defendant is not represented by counsel, as opposed to a trial where that right is guaranteed.
Moreover, lack of counsel undermines the reliability of the proceeding.

 The Crawford rule, on the other hand, applies to only one part of a trial -- the testimony
of unavailable witnesses -- and therefore has a much more limited effect. Furthermore, the rule
preceding Crawford, while still unconstitutional, at least offered some restraint on the admission
of questionable evidence: the so-called "adequate indicia of reliability." (19) The Gideon rule, by
comparison, firmly established a right which previously, at least in some jurisdictions, hardly
existed at all. (20)

 While Crawford unequivocally describes the Confrontation Clause as a "bedrock
procedural guarantee [which] applies to both federal and state prosecutions," (21) nowhere does the
opinion refer to the Crawford rule as one which particularly guarantees fairness and accuracy in
convictions. Nor does the opinion indicate that the Roberts rule significantly inhibited such
guaranties. Rather than fill a void in which no constitutional protections existed, the Court in
Crawford seeks only to ensure that any scheme envisioned by the States to assess reliability of
evidence include the method mandated by the Sixth Amendment:

Where nontestimonial hearsay is at issue, it is wholly consistent
with the Framers' design to afford the States flexibility in their
development of hearsay law - as does Roberts, and as would an
approach that exempted such statements from Confrontation
Clause scrutiny altogether. Where testimonial evidence is at issue,
however, the Sixth Amendment demands what the common law
required: unavailability and a prior opportunity for cross-examination. (22)

 

 In short, the Crawford rule does not necessarily improve the trial court's truth-finding
capabilities, nor does it seriously diminish the likelihood of an accurate conviction. Therefore, it
is not subject to the Teague exception. (23)

Conclusion

 Because Crawford is not retroactive, the relief sought by the applicant is not available to
him. Therefore, habeas-corpus relief is denied.


Delivered: September 27, 2006

Publish.
1. 541 U.S. 36 (2004).
2. Keith v. State, No. 08-96-00048-CR (Tex. App. -- El Paso, 1997, pet. ref'd) (not designated for
publication).
3. 448 U.S. 56 (1980).
4. Id., at 66.
5. Crawford, 541 U.S. at 68-69.
6. 489 U.S. 288 (1989).
7. Id.,at 310.
8. Id., at 307.
9. Id., at 311.
10. Id., at 311-12 (quoting the opinion of Harlan, J., in Mackey v. United States, 401 U.S. 667, 693-94
(1971)).
11. Id., at 313.
12. Beard v. Banks, 542 U.S. 406, 417-18 (2004); Sawyer v. Smith, 497 U.S. 227, 242 (1990) (overruled on
other grounds).
13. Crawford, 541 U.S., at 61.
14. Ibid.
15. Teague, 489 U.S., at 310.
16. Crawford, 541 U.S., at 63.
17. 372 U.S. 335 (1963).
18. Saffle v. Parks, 494 U.S. 484, 495 (1990). See also O'Dell v. Netherland, 521 U.S. 151, 167 (1997).
19. Roberts, 448 U.S., at 66.
20. Gideon, 372 U.S., at 342-44 (overruling Betts v. Brady, 316 U.S. 455 (1942), which held that the right to
counsel was not "fundamental and essential to a fair trial" and thus not obligatory on the States under the Fourteenth
Amendment).
21. Crawford, 541 U.S., at 42.
22. Id., at 68.
23. See Espy v. Massac, 443 F.3d 1362 (11th Cir. 2006); Lave v. Dretke, 444 F.3d 333 (5th Cir. 2006);
McGonagle v. United States, 137 Fed. Appx. 373 (1st Cir. 2005) (unpublished), cert. denied, 2005 U.S. LEXIS
7819 (2005); Murillo v. Frank, 402 F.3d 786 (7th Cir. 2005); Dorchy v. Jones, 398 F.3d 783 (6th Cir. 2005); Mungo
v. Duncan, 393 F.3d 327 (2nd Cir. 2004), cert. denied, 544 U.S. 1002 (2005); Brown v. Uphoff, 381 F.3d 1219
(10th Cir. 2004), cert. denied, 543 U.S. 1079 (2005); Evans v. Luebbers, 371 F.3d 438 (8th Cir. 2004), cert. denied,
543 U.S. 1067 (2005). But see Bockting v. Bayer, 399 F.3d 1010 (9th Cir. 2005), cert. granted, 2006 U.S. LEXIS
3934 (2006).